# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 1

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

| | |
|---|---|
| In the Matter of the Arbitration Between<br><br>FORESIGHT LUXEMBOURG SOLAR 1<br>    S.À.R.L.<br>FORESIGHT LUXEMBOURG SOLAR 2<br>    S.À.R.L.<br>GREENTECH ENERGY SYSTEMS A/S,<br>    (NOW KNOWN AS ATHENA<br>    INVESTMENTS A/S)<br>GWM RENEWABLE ENERGY I S.P.A.<br>GWM RENEWABLE ENERGY II S.P.A.<br><br><br>                   Petitioners,<br><br><br><br>v.<br><br><br>THE KINGDOM OF SPAIN<br><br><br>                   Respondent. | Index No. _____<br><br><br>**Petition to Confirm Foreign**<br>**Arbitral Award** |

## PETITION TO CONFIRM FOREIGN ARBITRAL AWARD

Petitioners Foresight Luxembourg Solar 1 S.À.R.L., Foresight Luxembourg Solar 2 S.À.R.L., Greentech Energy Systems A/S (now known as Athena Investments A/S), GWM Renewable Energy I S.P.A., and GWM Renewable Energy II S.P.A. (together, "Petitioners"), by and through their undersigned counsel, hereby petition this Court for an order pursuant to 9 U.S.C. § 207 (i) confirming and recognizing the final arbitral award (the "Award") rendered on November 14, 2018 in an arbitration between Petitioners and Respondent the Kingdom of Spain ("Spain") pursuant to the Rules of Arbitration of the Arbitration Institute of the Stockholm

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 1

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

Chamber of Commerce ("SCC Rules";[1] (ii) entering judgment in Petitioners' favor against Spain in the amount of the Award with pre- and post-judgment interest and costs as provided therein and as authorized by law, plus the costs of this proceeding; and (iii) awarding Petitioners such other and further relief as this Court deems just and proper.

### Parties, Jurisdiction and Venue

1.     Petitioners bring this summary proceeding under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention") and Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et seq.*, to confirm a duly-rendered arbitration award issued in their favor against Spain.

2.     Petitioners Foresight Luxembourg Solar 1 S.À.R.L ("Foresight 1") and Foresight Luxembourg Solar 2 S.À.R.L. ("Foresight 2") are private limited liability companies incorporated under the laws of Luxembourg, under the registration numbers B0146200 and B0151603, respectively.

3.     Petitioner GWM Renewable Energy I S.P.A. ("GWM I") was originally incorporated (as "GWM Renewable Energy S.A.") in Luxembourg and only in 2011 transferred to Italy and transformed into an Italian joint stock public company duly incorporated under the laws of Italy and listed in the commercial register in Rome under the registration number RM – 1305360.

4.     Petitioner GWM Renewable Energy II S.P.A. ("GWM II") was originally incorporated (as "GWM Renewable Energy S.A.") in Luxembourg and only in 2011 transferred to Italy and transformed into an Italian joint stock public company incorporated under the laws

---

[1] A duly certified copy of the Final Award is attached as **Exhibit A** to the Declaration of Charlene Sun, dated December 14, 2018 ("Sun Decl."), Exhibit A ¶ 9.

2

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 1

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

of Italy and listed in the commercial register in Rome under the registration number RM – 1305410.  Since the filing of the Request for Arbitration, GWM II changed its form to a limited liability company known as GWM Renewable Energy II S.R.L.  On June 30, 2014, GWM I owned 71% of GWM II. As of March 2016, GWM I owns 100% of GWM II.

5.      Petitioner Greentech Energy Systems A/S ("Greentech"), now known as Athena Investments A/S, is a publicly-listed company duly incorporated under the laws of Denmark and listed in the Danish commercial registry under the registration number 36696915.  Since June 30, 2014, GWM II has owned 71% of Greentech. As of March 2016, GMW II owns 50.73% of Greentech (now Athena Investments A/S). Greentech became Athena Investments A/S on December 12, 2017.

6.      Respondent is the Kingdom of Spain and is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-611.  This Court has personal jurisdiction over Spain pursuant to § 1330(b).

7.      28 U.S.C. § 1605(a)(6) provides an exception to sovereign immunity for any claim against a foreign state that seeks recognition of an arbitration award made pursuant to an agreement to arbitrate if the "agreement or award may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards[.]" 28 U.S.C. § 1605(a)(6)(B).  This Court therefore has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1330(a), because Spain is not entitled to sovereign immunity in connection with this proceeding, which seeks recognition of a foreign arbitral award falling under the New York Convention.

8.      Venue is proper in this Court pursuant to CPLR 503(a), and the amount in controversy herein exceeds the jurisdictional limits of all courts of inferior jurisdiction.

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 1

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

## The Arbitration Agreement

**A.     Spain's Consent to Arbitrate**

9.      Spain consented to arbitrate its dispute with Petitioners pursuant to the Energy

Charter Treaty ("ECT").[2] The arbitration agreement between the Petitioners and Spain consists

of two elements: (i) Spain's consent contained in Article 26(3) of the ECT; and (ii) Petitioners'

consent contained in their Request for Arbitration.

10.     Spain signed the ECT on December 17, 1994 and ratified it on December 11,

1997. The ECT entered into force in the Kingdom of Spain on April 16, 1998. In accordance

with Article 1(2) of the ECT, Spain is a Contracting Party to the ECT.[3]

11.     Article 26 of the ECT, entitled "Settlement of Disputes between an Investor and a

Contracting Party," provides as follows in sub-paragraph (3)(a):

> (3)(a) Subject only to subparagraphs (b) and (c), each Contracting Party hereby gives its
> unconditional consent to the submission of a dispute to international arbitration or
> conciliation in accordance with the provisions of this Article.

12.     Accordingly, Spain provided its written consent to the arbitration in ECT Article

26(3), as it is a Contracting Party to the ECT.

**B.     Petitioners' Consent to Arbitrate**

13.     Luxembourg signed the ECT on December 17, 1994 and ratified it on February 7,

1997. The ECT entered into force in Luxembourg on April 16, 1998. In accordance with Article

1(2) of the ECT, Luxembourg is a Contracting Party to the ECT.

14.     Italy signed the ECT on December 17, 1994 and ratified it on December 5, 1997.

The ECT entered into force in Italy on April 16, 1998. In accordance with Article 1(2) of the

---

[2] A true and correct copy of the ECT is attached as **Exhibit B** to the Sun Decl.

[3] Exhibit B, Article 1(2) of the ECT provides that a "Contracting Party" means "a state or Regional Economic
Integration Organization which has consented to be bound by this Treaty and for which the Treaty is in force."

4

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 1

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

ECT, Italy was a Contracting Party to the ECT until December 31, 2014 when it withdrew from the ECT.[4] While Italy is no longer a member of the ECT (as of January 1, 2016), all investments existing at the time of its renunciation of the ECT remain protected, and investors from Italy are allowed to use the Dispute Settlement Provisions of the ECT until 2036.[5]

15.    Denmark signed the ECT on December 17, 1994 and ratified it on August 22, 1997. The ECT entered into force in Denmark on April 16, 1998. In accordance with Article 1(2) of the ECT, Denmark is a Contracting Party to the ECT.

16.    As "compan[ies] or other organization[s] organized in accordance with the law applicable in" Luxembourg, Italy, and Denmark, Petitioners Foresight 1, Foresight 2, GMW I, and GMW II, and Greentech are "Investors" within the meaning of Article 1(7)(a)(ii) of the ECT.[6]

17.    As "Investors" under Article 1(7) of the ECT, Petitioners' investment-based claims against Spain were properly submitted to arbitration in accordance with the ECT, and the tribunal properly found that it had jurisdiction over Petitioners' claims.

18.    Articles 26(2)(c) and 26(4)(c) of the ECT provide that an Investor may elect to submit a dispute for resolution through arbitration under the Arbitration Institute of the Stockholm Chamber of Commerce. The Investor is required to make its consent in writing.[7]

---

[4] Italy's withdrawal took effect on January 1, 2016.

[5] Exhibit B, Article 47(3) of the ECT provides for a "sunset period" of 20 years during which the ECT will continue to apply to pre-existing qualifying investments after a signatory state's withdrawal from the Treaty.

[6] Exhibit B, Article 1(7) of the ECT provides, in pertinent part, that an "Investor" means "with respect to a Contracting Party," "(i) a natural person having the citizenship or nationality of or who is permanently residing in that Contracting Party in accordance with its applicable law," or "(ii) a company or other organization organized in accordance with the law applicable in that Contracting Party."

[7] See Exhibit B, ECT, Article 26(4)(c) ("In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to . . . [arbitration pursuant to the SCC Rules]."

5

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM          INDEX NO. 656251/2018
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 12/14/2018

19.     Petitioners provided their written consent to the Arbitration in ¶ 75 of their

Request for Arbitration dated November 2, 2015[8], as follows:

> "Claimants hereby confirm their consent to arbitration under the ECT and
> submit this dispute to the Arbitration Institute of the Stockholm Chamber
> of Commerce in accordance with Article 26(4)(c) of the ECT."[9]

### The Arbitration

20.     Petitioners commenced the arbitration at issue herein by serving a Request for

Arbitration on Spain on November 2, 2015. The Request for Arbitration invoked Article 26(4)(c)

of the ECT, which permits the submission of disputes arising under the ECT to arbitration "under

the Arbitration Institute of the Stockholm Chamber of Commerce."

21.     The arbitration was seated in Stockholm, Sweden and proceeded in accordance

with the Stockholm Chamber of Commerce ("SCC") Rules, as provided by the ECT. The

selection of the arbitral tribunal consisted of Dr. Michael Moser (Chairperson, appointed by the

SCC as Chairperson pursuant to Article 13 of the SCC Rules), Professor Dr. Klaus Sachs

(appointed by Petitioners), and Dr. Raúl Emilio Vinuesa (appointed by Respondent).

22.     Spain was represented by counsel in the arbitration by its attorneys (the Abogacía

General del Estado-Dirección del Servicio Jurídico del Estado).  Spain participated in all aspects

of the arbitration:   it submitted a Counter-Memorial on the Merits and Memorial on

Jurisdictional Objections, Rejoinder on the Merits and Reply on Jurisdiction as well as witness

statements and expert reports.

---

[8] A true and correct copy of the Request for Arbitration, dated November 2, 2015 is attached as **Exhibit C** to the
Sun Decl.
[9] Exhibit C ¶ 75.

6

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 1

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

23.     The tribunal conducted a hearing on Jurisdiction and Merits from January 22-26, 2018 at the ICC's hearing facility in Paris, France, during which the tribunal heard testimony from both Petitioners' and Respondent's witnesses.

24.     The tribunal issued the Award on November 14, 2018. The Award found that Spain had violated its obligations under the ECT with respect to Petitioners' investments, and found Spain liable to Petitioners in the amount of €39,000,000.00, and awarded reasonable costs incurred by the Petitioners totaling € 3,900,374.73 and US$ 2,997,596.33, as well as any applicable Value Added Tax.  It also awarded pre-award interest at a rate of 1.4% compounded monthly, and post-award interest at a rate of 3.5% compounded monthly. This Petition seeks recognition of the Award by this Court.  A duly-certified copy of the Award is attached as Exhibit A to the Sun Declaration.

### Summary of the Dispute

25.     Petitioners' case arises out of certain legislative and regulatory measures introduced by Spain beginning in 2007, the stated purpose of which was to induce private investment in renewable energy facilities in order to enable Spain to meet national and EU level targets for electricity generation from renewable energy sources by 2010.[10]

26.     Between May 2009 and May 2010, Petitioners acquired Spanish companies that operated three solar photovoltaic ("PV") facilities:  in May 2009, Foresight 1 acquired the 8MW Madridejos PV plant; in March 2010, Foresight 2 and GWM II jointly invested in the 9.8 MW La Castilleja plant; and in May 2010, GWM II invested in the 1.8 MW Fotocampillos PV project comprised of eighteen 100 kW plants.[11] All of these plants were registered under Royal Decree

---

[10] Exhibit A ¶ 53.
[11] Exhibit A ¶ 94.

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 1

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

661/2007 ("RD 661/2007"), which (i) established fixed Feed in Tariffs ("FiTs")[12] for qualifying PV facilities for the duration of their operating lives and (ii) gave such facilities priority of access and dispatch to the electricity grid.[13]

27.     Shortly after Petitioners' investments, Spain began enacting a number of decrees and laws, which later served as the basis for Petitioners' arbitration claims, including:

- In November 2010, Spain enacted Royal Decree 1565/2010 ("RD 1565/2010") which cancelled the right of PV facilities to receive the FiTs specified in RD 661/2007 after 25 years of operation (subsequently extended to thirty years).[14]

- In December 2010, Spain enacted Royal Decree-Law 14/2010 ("RDL 14/2010") which capped the annual operating hours for which PV facilities could receive FiTs and established a new 0.5EU/MWh "access toll" on all electricity delivered to the grid.[15]

- In December 2012, Spain enacted Law 15/2012 ("2012 TVPEE") introducing a 7% tax on all electricity generation revenue (including FiT revenues).

- In July 2013, Spain enacted Royal Decree-Law 9/2013 ("RDL 9/2013"), which repealed the RD 661/2007 support scheme and replaced it with a different support scheme that required renewable energy facilities to sell electricity on the wholesale market. Under the new support scheme, instead of FiTs, producers would receive the market price plus remuneration designed to achieve a "reasonable rate of return," which Spain would revise periodically in its

---

[12] A Feed-In Tariff is a payment to producers of renewable energy per kilowatt-hour of electricity delivered to the grid. .
[13] Exhibit A ¶ 54.
[14] Exhibit A ¶¶ 124-125 (this was ultimately extended by Law 2/2011 to 30 years).
[15] Exhibit A ¶¶ 126-128.

8

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 1

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

discretion.[16] The new support scheme established under RDL 9/2013 switched the support scheme from an "at risk" model to a "regulated return" model, and significantly reduced the amount of financial support provided to Claimants' PV plants.[17]

- In December 2013 through June 2014, Spain enacted Law 24/2013, Royal Decree 413/2014 ("RD 413/2014") and Ministerial Order IET/1045/2014 ("MO 1045/2014"), which further detailed how remuneration of PV facilities would henceforth be calculated.

28.    The net effect of these new regulations drastically reduced the profitability and value of Petitioners' investments, and in 2015 and 2016, Petitioners were forced to sell their investments in the PV plants at a substantial loss.[18]

29.    Petitioners' Request for Arbitration alleged that Spain violated Article 10(1) of the ECT by failing to provide fair and equitable treatment ("FET") to Claimants' investments, that their investments were unlawfully expropriated as a result of the changes to the regulatory framework after RD 661/2007, and that Spain violated the "umbrella clause" of Article 10(1) of the ECT by violating its obligations to Petitioners under RD 661/2007.[19]

30.    Spain presented two objections to the tribunal's jurisdiction: (i) that the dispute was an Intra-EU dispute and that EU law forbids EU Member States from arbitrating disputes

---

[16] Exhibit A ¶¶131, 133.
[17] Exhibit A ¶¶ 391-392.
[18] Exhibit A ¶¶ 142-144.
[19] Exhibit A ¶ 261.

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 1

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

with EU investors[20] and (ii) that the 2012 TVPEE tax introduced on the production of electrical energy is a legitimate Taxation Measure, subject to the carve-out in ECT Article 21(1).

31.     The tribunal ultimately rejected the first jurisdictional objection on grounds that the tribunal was "not aware of a single award that has found 'intra-EU' disputes to be excluded from the scope of Article 26(1) ECT," but there had been at least "eighteen awards in which jurisdiction over intra-EU investment treaty disputes had been upheld."[21] Moreover, since the hearing, the tribunal recalled that at least two more published awards had reached the same conclusion.[22]

32.     The tribunal sustained the second objection and therefore dismissed Petitioners' claims arising out of Spain's taxation measure.[23]

33.     With respect to liability, the tribunal found that while the Petitioners did not have a legitimate expectation to receive the precise FiT specified in RD 661/2007 for the entire lifetime of their PV plants, they did have a legitimate expectation that the legal and regulatory framework would not be fundamentally and abruptly altered.[24] As a result, the tribunal concluded that RDL 9/2013, Law 24/2013, RD 413/2014 and MO 1045/2013 violated the FET standard as set out in ECT Article 10(1).[25]

34.     The tribunal rejected Petitioners' expropriation and umbrella clause claims.[26]

---

[20] Exhibit A ¶¶ 153, 157; it should be noted that on March 3, 2017 the European Commission applied to the Tribunal for leave to intervene as a non-disputing party. On June 29, 2017 the Tribunal granted the European Commission's request to file an *amicus curiae* brief on the issues of jurisdiction in the arbitration and on July 20, 2017, the European Commission filed its *amicus curiae* brief. The Tribunal found the European Commission's brief helpful (Exhibit A ¶ 199) and notes that its decision not to directly comment on the Commission's brief or any part thereof is due to the fact that the Commission was not a party to the dispute (Exhibit A ¶ 199).

[21] Exhibit A ¶ 221.

[22] Exhibit A ¶ 221.

[23] Exhibit A ¶ 260.

[24] Exhibit A ¶ 365.

[25] Exhibit A ¶¶ 391-398.

[26] Exhibit A ¶¶ 413, 423.

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 1

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

35.    The tribunal, by majority, ultimately awarded Petitioners € 39,000,000.00 in damages relating to its FET claim, and ordered Respondent to pay Petitioners the costs of the Arbitration and reasonable costs incurred, totaling € 3,900,974.73 and US$ 2,997,596.33, as well as any applicable Value Added Tax. The tribunal then awarded interest on the Award at a rate of 1.4% compounded monthly from June 30, 2014 to the date of the Award (November 2018), and then from the date of the Award until payment at a rate of 3.5% compounded monthly.

### Cause of Action

36.    Petitioners repeat and reallege the allegations in paragraphs 1 through 35 as if set forth fully herein.

37.    The arbitration agreement set forth herein at paragraphs 9 through 19 constitutes "an agreement in writing" within the meaning of Article II(2) of the New York convention.[27]

38.    The Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

39.    The Award was made in Sweden, a nation that is a signatory to the New York Convention, and which is a State other than the State where recognition and enforcement is sought hereby.

40.    The Kingdom of Spain, Luxembourg, Italy and Denmark are also each signatories to the New York Convention.

41.    The Award is final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

---

[27] *See* Exhibit B, ECT, Article 26(5)(a)(ii) ("The consent given in paragraph (3) together with the written consent of the Investor given pursuant to paragraph (4) shall be considered to satisfy the requirement for . . . an 'agreement in writing' for the purpose of article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, 10 June 1958 (hereinafter referred to as the 'New York Convention').").

11

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 1

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

42.     None of the grounds for refusal or deferral of the Award set forth in the New York Convention apply.

43.     The Award is required to be recognized, and judgment entered thereon, pursuant to the New York Convention and 9 U.S.C. § 207.


WHEREFORE, Petitioners pray:

(a)     That the Court enter an order pursuant to 9 U.S.C. § 207 recognizing the Award against Spain; and

(b)     That, on the basis of the Award, the Court enter a judgment that Spain is liable to Petitioners jointly in the amount of €39,000,000.00 plus (i) Petitioners' reasonable costs from the Arbitration in the amount of € 3,900,374.73 and US$ 2,977,596.33; (ii) any applicable Value Added Tax; (iii) pre-award interest at a rate of 1.4% compound monthly from June 30, 2014 to November 14, 2018; (iv) post-award, pre-judgment interest at a rate of 3.5% compounded monthly from November 14, 2018 to the date that judgment is entered herein, and (v) post-judgment interest pursuant to N.Y. C.P.L.R. § 5004 from the date that judgment is entered to the date of satisfaction; and

(c)     That Petitioners be awarded such other and further relief as may be proper.


Dated: New York, New York
       December 14, 2018

Respectfully submitted,

/s/     James E. Berger
James E. Berger
Charlene C. Sun

KING & SPALDING LLP


12

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 1

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2200
Fax: (212) 556 -2222
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioners*
Foresight Luxembourg Solar 1 S.À.R.L.
Foresight Luxembourg Solar 2 S.À.R.L.
Greentech Energy Systems A/S (now known as
Athena Investments A/S)
GWM Renewable Energy I S.P.A.
GWM Renewable Energy II S.P.

13

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.

N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                                    RECIBIDO POR EL NYSCEF: 14/12/2018

**TRIBUNAL SUPREMO DEL ESTADO DE NUEVA YORK**
**CONDADO DE NUEVA YORK: DIVISIÓN COMERCIAL**

| | |
|---|---|
| En el caso de arbitraje entre<br><br>FORESIGHT LUXEMBOURG SOLAR 1 S.À.R.L.<br>FORESIGHT LUXEMBOURG SOLAR 2 S.À.R.L.<br>GREENTECH ENERGY SYSTEMS A/S, (AHORA LLAMADO ATHENA INVESTMENTS A/S)<br>GWM RENEWABLE ENERGY I S.P.A.<br>GWM RENEWABLE ENERGY II S.P.A.<br><br>Demandantes,<br><br><br>vs.<br><br>REINO DE ESPAÑA<br><br>Demandado. | N.° de índice _____<br><br>**Petición para confirmar<br>un laudo arbitral extranjero** |

## PETICIÓN PARA CONFIRMAR UN LAUDO ARBITRAL EXTRANJERO

Los Demandantes Foresight Luxembourg Solar 1 S.À.R.L., Foresight Luxembourg Solar 2 S.À.R.L., Greentech Energy Systems A/S (ahora llamado Athena Investments A/S), GWM Renewable Energy I S.P.A. y GWM Renewable Energy II S.P.A. (de forma colectiva, los "Demandantes"), por y a través de su abogado que suscribe, por este medio solicito al presente Tribunal la emisión de una resolución de conformidad con 9 U.S.C. § 207 que (i) confirme y reconozca el laudo arbitral definitivo (el "Laudo") emitido el 14 de noviembre de 2018 en un

1

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                    RECIBIDO POR EL NYSCEF: 14/12/2018

arbitraje entre los Demandantes y el Demandado, el Reino de España ("España"), de conformidad con las Normas de Arbitraje del Instituto de Arbitraje de la Cámara de Comercio de Estocolmo ("Normas de SCC";[1] (ii) registre la sentencia a favor de los Demandantes en contra de España por el importe del Laudo con intereses y costes previos y posteriores a la sentencia según lo dispuesto y autorizado por la ley, más los costes de este proceso; y (iii) otorgue a los Demandantes las demás medidas legales que este Tribunal considere justas y apropiadas.

### Partes, jurisdicción y competencia

1.     Los Demandantes han entablado este procedimiento sumario conforme a la Convención de las Naciones Unidas sobre el Reconocimiento y la Ejecución de los Laudos Arbitrales Extranjeros (10 de junio de 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (la "Convención de Nueva York") y el capítulo 2 de la Ley Federal de Arbitraje ("LFA"), 9 U.S.C. §§ 201 *et seq.*, a fin de confirmar un laudo arbitral debidamente emitido a su favor en contra de España.

2.     Los Demandantes Foresight Luxembourg Solar 1 S.À.R.L ("Foresight 1") y Foresight Luxembourg Solar 2 S.À.R.L. ("Foresight 2") son sociedades privadas de responsabilidad limitada constituidas bajo las leyes de Luxemburgo, con los números de registro B0146200 y B0151603, respectivamente.

3.     El Demandante GWM Renewable Energy I S.P.A. ("GWM I") fue constituido originalmente (como "GWM Renewable Energy S.A.") en Luxemburgo y en 2011 se reubicó en Italia y se transformó en una sociedad anónima italiana que cotiza en bolsa debidamente constituida en virtud de las leyes de Italia e inscrita en el registro comercial de Roma con el número de registro RM – 1305360.

---

[1] Se adjunta una copia debidamente certificada del Laudo definitivo como **Anexo A** a la Declaración de Charlene Sun, con fecha del 14 de diciembre de 2018 ("Decl. Sun"), Anexo A ¶ 9.

2

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.

DOC de la NYSCEF. N.° 1

N.° DE ÍNDICE 656251/2018
RECIBIDO POR EL NYSCEF: 14/12/2018

4.      El Demandante GWM Renewable Energy II S.P.A. ("GWM II") fue constituido originalmente (como "GWM Renewable Energy S.A.") en Luxemburgo y en 2011 se reubicó en Italia y se transformó en una sociedad anónima italiana debidamente constituida en virtud de las leyes de Italia e inscrita en el registro comercial de Roma con el número de registro RM – 1305360. Desde la presentación de la Solicitud de arbitraje, GWM II cambió su naturaleza jurídica a una sociedad de responsabilidad limitada conocida como GWM Renewable Energy II S.R.L. Al 30 de junio de 2014, GWM I poseía el 71 % de GWM II. A partir de marzo de 2016, GWM I es propietaria del 100 % del GWM II.

5.      El Demandante Greentech Energy Systems A/S ("Greentech"), ahora llamado Athena Investments A/S, es una empresa que cotiza en bolsa debidamente constituida según las leyes de Dinamarca e inscrita en el registro comercial danés con el número de registro 36696915. Desde el 30 de junio, 2014, GWM II posee el 71 % de Greentech. A partir de marzo de 2016, GMW II posee el 50,73 % de Greentech (ahora Athena Investments A/S). Greentech se convirtió en Athena Investments A/S el 12 de diciembre de 2017.

6.      El Demandado es el Reino de España y es un estado extranjero según el significado de la Ley de Inmunidades Soberanas Extranjeras ("LISE"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-611. Este Tribunal tiene jurisdicción personal sobre España conforme a § 1330(b).

7.      28 U.S.C. § 1605(a)(6) proporciona una excepción a la inmunidad soberana en cualquier reclamación contra un estado extranjero en donde se busque el reconocimiento de un laudo arbitral emitido de conformidad con un acuerdo de arbitraje si el "acuerdo o laudo puede regirse por un tratado u otro acuerdo internacional en vigor para los Estados Unidos que establezca el reconocimiento y la ejecución de laudos arbitrales [.]" 28 U.S.C. § 1605(a)(6)(B). Por lo tanto, este Tribunal tiene jurisdicción sobre este asunto en virtud de la Ley 28 U.S.C. § 1330(a), porque España no tiene derecho a la inmunidad soberana en relación con este procedimiento, en donde se busca el reconocimiento de un laudo arbitral extranjero en virtud de la Convención de Nueva York.

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                    RECIBIDO POR EL NYSCEF: 14/12/2018

8.      Este Tribunal es competente en virtud de CPLR 503(a), y la cantidad que se litiga en el presente supera los límites jurisdiccionales de todos los tribunales de jurisdicción inferior.

**El Acuerdo de arbitraje**

**A.      Consentimiento para arbitraje de España**

9.      España dio su consentimiento para el arbitraje de su disputa con los Demandantes en virtud del Tratado de la Carta de Energía ("TCE").[2] El acuerdo de arbitraje entre los Demandantes y España consta de dos elementos: (i) el consentimiento de España contenido en el artículo 26(3) del TCE; y (ii) consentimiento de los Demandantes contenido en su Solicitud de Arbitraje.

10.     España suscribió el TCE el 17 de diciembre de 1994 y la ratificó el 11 de diciembre de 1997. El TCE entró en vigor en el Reino de España el 16 de abril de 1998. De conformidad con el artículo 1(2) del TCE, España es una Parte contratante del TCE.[3]

11.     El artículo 26 del TCE, titulado "Resolución de conflictos entre un Inversor y una Parte contratante" establece lo siguiente en el subpárrafo (3)(a):

(3)(a) Sujeto únicamente a los subpárrafos (b) y (c), cada Parte Contratante otorga por el presente su consentimiento incondicional al sometimiento de una disputa al arbitraje o conciliación internacionales de conformidad con las disposiciones de este artículo.

12.     En consecuencia, España proporcionó su consentimiento por escrito al arbitraje en el artículo 26(3) de ECT, ya que es una Parte contratante del TCE.

**B.      Consentimiento para arbitraje de los Demandantes**

---

[2] Se adjunta una copia fiel y exacta del TCE como **Anexo B** a la Decl. Sun.
[3] En el Anexo B, el artículo 1(2) del TCE establece que una "Parte contratante" significa "una organización de integración económica regional o estatal que ha dado su consentimiento para estar obligado por este Tratado y para la cual el Tratado está en vigor".

4

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                          RECIBIDO POR EL NYSCEF: 14/12/2018

13.    Luxemburgo firmó el TCE el 17 de diciembre de 1994 y lo ratificó el 7 de febrero de 1997. El TCE entró en vigor en Luxemburgo el 16 de abril de 1998. De conformidad con el artículo 1(2) del TCE, Luxemburgo es una Parte contratante del TCE.

14.    Italia firmó el TCE el 17 de diciembre de 1994 y lo ratificó el 5 de diciembre de 1997. El TCE entró en vigor en Italia el 16 de abril de 1998. De conformidad con el artículo 1(2) del TCE, Italia fue una Parte contratante en el ECT hasta el 31 de diciembre de 2014, cuando se retiró del TCE.[4] Aunque Italia ya no es miembro del TCE (a partir del 1.° de enero de 2016), todas las inversiones existentes al momento de su renuncia del TCE permanecen protegidas, y los inversores de Italia pueden utilizar las Disposiciones de resolución de conflictos del TCE hasta el 2036.[5]

15.    Dinamarca firmó el TCE el 17 de diciembre de 1994 y lo ratificó el 22 de agosto de 1997. El TCE entró en vigor en Dinamarca el 16 de abril de 1998. De conformidad con el artículo 1(2) del TCE, Dinamarca es una Parte contratante del TCE.

16.    Como "compañ[ías]" u otras organizaciones constituidas de acuerdo con la ley aplicable en" Luxemburgo, Italia, y Dinamarca, los demandantes Foresight 1, Foresight 2, GMW I, GMW II y Greentech son "Inversores" en el sentido del artículo 1(7)(a)(ii) del TCE.[6]

17.    Como "Inversores" según el apartado 7 del artículo 1 del TCE, las reclamaciones con respecto a inversiones de los Demandantes contra España se sometieron al arbitraje de forma adecuada de conformidad con el TCE, y el tribunal determinó adecuadamente que tenía jurisdicción sobre las solicitudes de los Demandantes.

---

[4] La retirada de Italia entró en vigor el 1.° de enero de 2016.
[5] En el Anexo B, el artículo 47(3) del TCE proporciona un "periodo de suspensión" de 20 años durante el cual el TCE continuará aplicándose a las inversiones cualificadas preexistentes después de la retirada del Tratado de un estado firmante.
[6] En el Anexo B, el artículo 1(7) del TCE establece, en la parte pertinente, que un "Inversor" significa "con respecto a una Parte contratante", "(i) una persona física que tenga la ciudadanía o nacionalidad de o que resida permanentemente en esa Parte contratante de conformidad con su legislación aplicable", o "(ii) una empresa u otra organización constituida de conformidad con la legislación aplicable en esa Parte contratante".

5

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                                RECIBIDO POR EL NYSCEF: 14/12/2018

18.    Los artículos 26(2)(c) y 26(4)(c) del TCE establecen que un Inversor puede optar por someter una disputa para su resolución mediante arbitraje conforme a las normas del Instituto de Arbitraje de la Cámara de Comercio de Estocolmo. El Inversor debe brindar su consentimiento por escrito.[7]

19.    Los Demandantes otorgaron su consentimiento por escrito para el Arbitraje en ¶ 75 de su Solicitud de Arbitraje con fecha del 2 de noviembre de 2015[8], de la siguiente manera:

> "Los Demandantes confirman por este medio su consentimiento para el arbitraje en virtud del TCE y someten esta disputa a las normas del Instituto de Arbitraje de la Cámara de Comercio de Estocolmo de conformidad con el artículo 26(4)(c) del TCE".[9]

**El arbitraje**

20.    Los Demandantes iniciaron el arbitraje objeto del presente al notificar una Solicitud de Arbitraje a España el 2 de noviembre de 2015. La solicitud de arbitraje se basó en el artículo 26(4)(c) del TCE, que permite el sometimiento de disputas derivadas del TCE al arbitraje "en virtud de las normas del Instituto de Arbitraje de la Cámara de Comercio de Estocolmo".

21.    El arbitraje se realizó en Estocolmo, Suecia y se procedió de acuerdo con las normas de la Cámara de Comercio de Estocolmo ("SCC", por sus siglas en inglés), según lo dispuesto por el TCE. La selección del tribunal arbitral consistió en el Dr. Michael Moser (Presidente, designado por SCC como presidente de conformidad con el artículo 13 de las normas del SCC), Profesor Dr. Klaus Sachs (designado por los Demandantes), y el Dr. Raúl Emilio Vinuesa (designado por el Demandado).

---

[7] Véase el Anexo B, TCE, artículo 26(4)(c) ("En el caso de que un Inversor opte por someter la disputa a la resolución en virtud del subpárrafo (2)(c), el Inversor proporcionará además su consentimiento por escrito para que la disputa se someta al... [arbitraje conforme a las Normas de SCC]."
[8] Se adjunta una copia fiel y exacta de la Solicitud de arbitraje con fecha del 2 de noviembre de 2015 como **Anexo C** a la Decl. Sun.
[9] Anexo C ¶ 75.

6

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                   RECIBIDO POR EL NYSCEF: 14/12/2018

22.    España contó con representación jurídica en el arbitraje por parte de sus abogados (Abogacía General del Estado-Dirección del Servicio Jurídico del Estado). España participó en todos los aspectos del arbitraje: presentó un memorial de contestación sobre los méritos del caso y un memorial sobre las objeciones jurisdiccionales, una réplica sobre los méritos y una respuesta sobre la jurisdicción, así como declaraciones de testigos e informes periciales.

23.    El tribunal arbitral realizó una audiencia sobre la jurisdicción y méritos del 22 al 26 de enero de 2018 en el centro de audiencias de ICC en París, Francia, durante la cual el tribunal arbitral oyó el testimonio de los testigos de los Demandantes y del Demandado.

24.    El tribunal emitió el Laudo el 14 de noviembre de 2018. El Laudo determinó que España había infringido sus obligaciones en virtud del TCE con respecto a las inversiones de los Demandantes, y determinó que España es responsable ante los Demandantes por un importe de 39 000 000,00 €, y ordenó el pago de los costes justificados en que incurrieron los Demandantes por un total de 3 900 374,73 € y 2 997 596,33 USD, así como cualquier impuesto sobre el valor añadido aplicable. También ordenó el pago de intereses previos al laudo a una tasa del 1,4 % mensual, y de intereses posteriores al laudo a una tasa del 3,5 % mensual. Esta Petición busca el reconocimiento del Laudo por parte de este Tribunal. Una copia debidamente certificada del Laudo se adjunta como Anexo A a la Declaración de Sun.

**Resumen de la disputa**

25.    La demanda de los Demandantes surge de determinadas medidas legislativas y normativas introducidas por España a partir de 2007, cuyo objetivo declarado fue inducir la inversión privada en instalaciones de energía renovable con el fin de permitir a España cumplir

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                RECIBIDO POR EL NYSCEF: 14/12/2018

con los objetivos nacionales y de la UE para la generación de electricidad a partir de fuentes de energía renovable para el 2010.[10]

26.     Entre mayo de 2009 y mayo de 2010, los Demandantes adquirieron empresas españolas que operaban tres instalaciones solares fotovoltaicas (FV): en mayo de 2009, Foresight 1 adquirió la planta fotovoltaica de 8MW Madridejos; en marzo de 2010, Foresight 2 y GWM II invirtieron conjuntamente en la planta de 9,8 MW La Castilleja; y en mayo de 2010, GWM II invirtió en el proyecto fotovoltaico Fotocampillos de 1,8 MW compuesto por dieciocho plantas de 100 Kw.[11] Todas estas plantas fueron registradas conforme al Real Decreto 661/2007 ("RD 661/2007"), que (i) estableció tarifas reguladas ("FiTs", por sus siglas en inglés)[12] para las instalaciones fotovoltaicas que reúnan los requisitos durante la duración de su vida útil y (ii) otorgó prioridad de acceso y conexión a la red eléctrica a dichas instalaciones.[13]

27.     Poco después de las inversiones de los Demandantes, España comenzó a promulgar diversos decretos y leyes, que posteriormente fueron el fundamento para las reclamaciones arbitrales de los Demandantes, entre los cuales se incluyen los siguientes:

• En noviembre de 2010, España promulgó el Real Decreto 1565/2010 ("RD 1565/2010"), que canceló el derecho de las instalaciones fotovoltaicas para recibir los ajustes especificados en el RD 661/2007 después de 25 años de funcionamiento (posteriormente ampliados a treinta años).[14]

---

[10] Anexo A ¶ 53.
[11] Anexo A ¶ 94.
[12] Una tarifa regulada es un pago a los productores de energía renovable por kilovatio por hora de electricidad entregada a la red.
[13] Anexo A ¶ 54.
[14] Anexo A ¶¶ 124-125 (esto se amplió en última instancia por la Ley 2/2011 a 30 años).

8

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                    RECIBIDO POR EL NYSCEF: 14/12/2018

- En diciembre de 2010, España promulgó el Real Decreto 14/2010 ("RDL 14/2010"), que limitó las horas de funcionamiento anuales para las que las instalaciones fotovoltaicas podían recibir las FiTs y establecieron una nueva "cuota de acceso" de 0,5 EU/MWh respecto de toda la electricidad entregada a la red.[15]

- En diciembre de 2012, España promulgó la Ley 15/2012 ("TVPEE 2012") que estableció un impuesto del 7 % sobre todos los ingresos de generación de electricidad (incluidos los ingresos de FiTs).

- En julio de 2013, España promulgó el Real Decreto 9/2013 ("RDL 9/2013"), que revocó el plan de apoyo establecido en RD 661/2007 y lo reemplazó por un plan de apoyo diferente que exigía a las instalaciones de energía renovable vender electricidad en el mercado mayorista. Bajo el nuevo plan de apoyo, en lugar de FiTs, los productores recibirían el precio del mercado más una remuneración diseñada para lograr una "tasa razonable de rentabilidad", que España revisaría periódicamente de forma discrecional.[16] El nuevo plan de apoyo establecido en RDL 9/2013 cambió el esquema de apoyo de un modelo de "riesgo" a un modelo de "rentabilidad regulada", y redujo significativamente la cantidad de apoyo financiero proporcionado a las plantas fotovoltaicas de los Demandantes.[17]

- De diciembre de 2013 a junio de 2014, España promulgó la Ley 24/2013, el Real Decreto 413/2014 ("RD 413/2014") y la Orden Ministerial IET/1045/2014 ("MO 1045/2014"), que detallan aún más cómo se calcularía la remuneración de las instalaciones fotovoltaicas.

---

[15] Anexo A ¶¶ 126-128.
[16] Anexo A ¶¶131, 133.
[17] Anexo A ¶¶ 391-392.

9

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                    RECIBIDO POR EL NYSCEF: 14/12/2018

28.   El efecto neto de estas nuevas normativas redujo drásticamente la rentabilidad y el valor de las inversiones de los Demandantes, y en 2015 y 2016, los Demandantes se vieron obligados a vender sus inversiones en las plantas fotovoltaicas con una pérdida considerable.[18]

29.   En la Solicitud de arbitraje de los Demandantes se alegó que España infringió el artículo 10(1) del TCE al no proporcionar un trato justo y equitativo ("TJE") a las inversiones de los Demandantes, que sus inversiones fueran expropiadas de forma ilegal como resultado de los cambios en el marco regulatorio después del RD 661/2007, y que España infringió la "cláusula de ámbito laboral" del artículo 10(1) del TCE al incumplir sus obligaciones para con los Demandantes en virtud del RD 661/2007.[19]

30.   España presentó dos objeciones a la jurisdicción del tribunal: (i) que la disputa era una disputa interna de la UE y que la legislación de la UE prohíbe a los Estados miembros de la UE participar en el arbitraje de disputas con inversores de la UE[20] y (ii) que el impuesto de TVPEE 2012 creado sobre la producción de energía eléctrica es una medida tributaria legítima, sujeta a la excepción del artículo 21(1) del TCE.

31.   En última instancia, el tribunal rechazó la primera objeción jurisdiccional sobre la base de que el tribunal "no tenía conocimiento de algún laudo en donde se determine que las

---

[18] Anexo A ¶¶ 142-144.

[19] Anexo A ¶ 261.

[20] Anexo A ¶¶ 153, 157; debe tenerse en cuenta que el 3 de marzo de 2017, la Comisión Europea solicitó al Tribunal su permiso para intervenir como una parte no en litigio. El 29 de junio de 2017, el Tribunal aprobó la solicitud de la Comisión Europea para presentar un memorial de *amicus curiae* sobre los problemas de jurisdicción en el arbitraje y el 20 de julio de 2017, la Comisión Europea presentó su memorial de *amicus curiae* . El Tribunal determinó que el memorial de la Comisión Europea fue útil (Anexo A ¶ 199) y señaló que su decisión de no hacer comentarios directamente sobre el memorial de la Comisión o de cualquier parte del mismo se debe al hecho de que la Comisión no era parte del litigio (Anexo A ¶ 199).

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                              RECIBIDO POR EL NYSCEF: 14/12/2018

disputas intracomunitarias están excluidas del alcance del artículo 26(1) del TCE", pero que se han emitido al menos "dieciocho laudos en los cuales la jurisdicción sobre los litigios de los tratados de inversión intracomunitarios ha sido ratificada".[21] Asimismo, desde la fecha de la audiencia, el tribunal indicó que al menos dos laudos más publicados brindaron la misma conclusión.[22]

32.     El tribunal consideró que la segunda objeción ha lugar y, por lo tanto, desestimó las reclamaciones de los Demandantes derivadas de la medida tributaria de España.[23]

33.     Con respecto a la responsabilidad civil, el tribunal determinó que, aunque los Demandantes no tenían expectativas legítimas de recibir la tarifa FiTs exacta que se indica en el RD 661/2007 durante toda la vida útil de sus plantas fotovoltaicas, tenían una expectativa legítima de que el marco legal y normativo no alteraría de forma significativa y abrupta.[24] Como resultado de ello, el tribunal concluyó que el RDL 9/2013, la Ley 24/2013, el RD 413/2014 y MO 1045/2013 infringieron las normas de TJE tal y como se establece en el artículo 10(1) de TCE.[25]

34.     El tribunal rechazó las reclamaciones de expropiación y cláusula de ámbito general de las Partes Demandantes.[26]

35.     El tribunal, por mayoría, en última instancia otorgó a los Demandantes 39 000 000,00 € como indemnización en relación con su reclamación de TJE, y solicitó al Demandado que pague a los Demandantes los costes del Arbitraje y los costes justificados en que se incurrieron, por un total de 3 900 974,73 € y 2 997 596,33 USD, así como cualquier impuesto sobre el valor añadido aplicable. El tribunal ordenó además el pago de intereses sobre el Laudo a

---

[21] Anexo A ¶ 221.
[22] Anexo A ¶ 221.
[23] Anexo A ¶ 260.
[24] Anexo A ¶ 365.
[25] Anexo A ¶¶391-398.
[26] Anexo A ¶¶ 413, 423.

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1         RECIBIDO POR EL NYSCEF: 14/12/2018

una tasa del 1,4% mensual del 30 de junio de 2014 hasta la fecha del Laudo (noviembre de 2018), y desde la fecha del Laudo hasta el pago a una tasa del 3,5 % mensual.

### Causa de acción

36.     Los Demandantes reiteran y vuelven a manifestar las declaraciones de los párrafos 1 a 35 tan como se establecen plenamente en este documento.

37.     El acuerdo de arbitraje que se indica en el presente documento en los párrafos 9 a 19 constituye "un acuerdo por escrito" en el sentido del artículo II(2) de la Convención de Nueva York.[27]

38.     El Laudo surgió de una relación legal de carácter comercial conforme al significado establecido en 9 U.S.C. § 202.

39.     El Laudo se otorgó en Suecia, una nación que es signataria de la Convención de Nueva York, y que es un Estado distinto del Estado en donde se solicita el reconocimiento y la ejecución por este medio.

40.     El Reino de España, Luxemburgo, Italia y Dinamarca son también firmantes de la Convención de Nueva York.

41.     El Laudo es definitivo y vinculante conforme al significado de la Convención de Nueva York y el capítulo 2 de la LFA.

42.     No se aplica ninguna de los causales de rechazo o aplazamiento del Laudo establecidas en la Convención de Nueva York.

---

[27] *Véase* en el Anexo B, TCE, artículo 26(5)(a)(ii) ("Se considerará que el consentimiento otorgado en el párrafo (3) junto con el consentimiento por escrito del Inversor otorgado en virtud del párrafo (4) satisface el requisito de... un "acuerdo por escrito" a efectos del artículo II de la Convención de las Naciones Unidas para el Reconocimiento y la Ejecución de Laudos Arbitrales Extranjeros, celebrada en Nueva York, el 10 de junio de 1958 (en adelante, la "Convención de Nueva York").

12

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                          RECIBIDO POR EL NYSCEF: 14/12/2018

43.    Es necesario reconocer el Laudo, y registrar la sentencia respecto del mismo, de conformidad con la Convención de Nueva York y 9 U.S.C. § 207.

EN TESTIMONIO DE LO CUAL, los Demandantes solicitan:

(a)    Que el Tribunal emita una resolución conforme a 9 U.S.C. § 207 que reconozca el Laudo contra España; y

(b)    que, con base en el Laudo, el Tribunal declare que España es responsable ante los Demandantes conjuntamente por el importe de 39 000 000,00 € más (i) los costes justificados de los Demandantes del Arbitraje por el importe de 3 900 374,73 € y 2 977 596,33 USD; (ii) cualquier impuesto sobre el valor añadido aplicable; (iii) intereses previos al laudo a una tasa del 1,4% mensual del 30 de junio de 2014 al 14 de noviembre de 2018; (iv) intereses después del laudo y previos a la sentencia a una tasa del 3,5 % mensual del 14 de noviembre de 2018 a la fecha en que se emita la sentencia objeto del presente, e (v) intereses posteriores a la sentencia de conformidad con N.Y. C.P.L.R. § 5004 de la fecha en que se emita la sentencia hasta a la fecha de cumplimiento del pago; y

(c)    Que se concedan a los Demandantes todas las demás medidas adicionales que sean apropiadas.

Fecha: Nueva York, Nueva York
        14 de diciembre de 2018

Atentamente,

/s/ James E. Berger
James E. Berger
Charlene C. Sun

KING & SPALDING LLP

1185 Avenue of the Americas
Nueva York, NY 10036-4003
Tel.: (212) 556-2200

13

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 1                                          RECIBIDO POR EL NYSCEF: 14/12/2018

Fax: (212) 556 -2222
jberger@kslaw.com
csun@kslaw.com

*Abogados de los Demandantes*
Foresight Luxembourg Solar 1 S.À.R.L.
Foresight Luxembourg Solar 2 S.À.R.L.
Greentech Energy Systems A/S (ahora
llamado Athena Investments A/S)
GWM Renewable Energy I S.P.A.
GWM Renewable Energy II S.P.

14



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify that the document titled, "2018-12-14 [Dkt 01] Petition to Confirm Foreign Arbitral Award" with index number **656251/2018** is, to the best of my knowledge and belief, a true and accurate translation from English into Spanish (ES).

Aurora Landman

Sworn to before me this
December 20, 2018

Signature, Notary Public

WENDY POON
NOTARY
NO. 01PO6356754
QUALIFIED IN
QUEENS COUNTY
COMM. EXP
04-03-2021
PUBLIC
STATE OF NEW YORK

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 40TH FLOOR, NEW YORK, NY 10016 I T 212.689.5555 I F 212.689.1059 I WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 2

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

---

In the Matter of the Arbitration Between

FORESIGHT LUXEMBOURG SOLAR 1 S.À.R.L.
FORESIGHT LUXEMBOURG SOLAR 2 S.À.R.L.
GREENTECH ENERGY SYSTEMS A/S (NOW KNOWN AS ATHENA INVESTMENTS A/S)
GWM RENEWABLE ENERGY I S.P.A.
GWM RENEWABLE ENERGY II S.P.A.

                                 Petitioners,

                  v.

THE KINGDOM OF SPAIN

                                Respondent.

---

Index No. _____

**Notice of Petition to Confirm Foreign Arbitral Award**

---

PLEASE TAKE NOTICE that, on December 14, 2018, Petitioners Foresight Luxembourg Solar 1 S.À.R.L., Foresight Luxembourg Solar 2 S.À.R.L., Greentech Energy Systems A/S (now known as Athena Investments A/S), GWM Renewable Energy I S.P.A., and GWM Renewable Energy II S.P., have filed a Petition to Confirm Arbitral Award in the

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 2

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

Supreme Court of The State of New York, New York County, against Respondent, the Kingdom of Spain.  A copy of the Petition, the Affirmation of Charlene C. Sun dated December 14, 2018, and all exhibits thereto, is attached hereto.  An application will be made to this Court, to be held at a courthouse thereof, located at 60 Centre Street, City of New York, County of New York, State of New York, at the Submissions Part, Room 130, on the 12th day of April, 2019, at 9:30 a.m. that day, or as soon thereafter as counsel can be heard, for an order pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38) and Chapter 2 of the Federal Arbitration Act (9 U.S.C. § 201, *et seq.*), confirming the Award and directing that judgment be entered thereon, and for such other and further relief as may be just, proper, and equitable, together with the costs and disbursements of this proceeding.

PLEASE TAKE FURTHER NOTICE that an answer and supporting affidavits, if any, shall be served at least seven days before the aforesaid date of hearing.

Dated: New York, New York
December 14, 2018

Respectfully submitted,

*/s/* James E. Berger
James E. Berger
Charlene C. Sun
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2200
Fax: (212) 556 -2222
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioners*

2

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.º DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.º 2                                    RECIBIDO POR EL NYSCEF: 14/12/2018

**TRIBUNAL SUPREMO DEL ESTADO DE NUEVA YORK**
**CONDADO DE NUEVA YORK: DIVISIÓN COMERCIAL**

| | |
|---|---|
| En el caso de arbitraje entre<br><br>FORESIGHT LUXEMBOURG SOLAR 1 S.À.R.L.<br>FORESIGHT LUXEMBOURG SOLAR 2 S.À.R.L.<br>GREENTECH ENERGY SYSTEMS A/S, (AHORA LLAMADO ATHENA INVESTMENTS A/S)<br>GWM RENEWABLE ENERGY I S.P.A.<br>GWM RENEWABLE ENERGY II S.P.A.<br><br><div align="right">Demandantes,</div><br><br><div align="center">vs.</div><br>REINO DE ESPAÑA<br><br><br><div align="center">Demandado.</div> | <br><br><br><br>N.º de índice _____<br><br>**Aviso de petición para confirmar un laudo arbitral extranjero** |

POR ESTE MEDIO INFORMAMOS QUE, el 14 de diciembre de 2018, los Demandantes Foresight Luxembourg Solar 1 S.À.R.L., Foresight Luxembourg Solar 2 S.À.R.L., Greentech Energy Systems A/S (ahora llamado Athena Investments A/S), GWM Renewable Energy I S.P.A. y GWM Renewable Energy II S.P. presentaron una Petición para confirmar un laudo arbitral en el Tribunal Supremo del Estado de Nueva York, Condado de Nueva York, en contra

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.° DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.° 2    RECIBIDO POR EL NYSCEF: 14/12/2018

del Demandado, el Reino de España. Se adjuntan al presente documento una copia de la Petición, la Declaración de Charlene C. Sun con fecha del 14 de diciembre de 2018 y todos los anexos respectivos. Se presentará una solicitud a este Tribunal, mediante un acto que se celebrará en el juzgado del mismo, ubicado en 60 Centre Street, Ciudad de Nueva York, Condado de Nueva York, Estado de Nueva York, en el Área de Presentación de Documentos, Sala 130, el día 12 de abril de 2019, a las 9:30 a. m. de dicho día, o de hacerlo más tarde, a la brevedad posible para que se pueda escuchar al abogado respectivo, a fin de que se emita una resolución judicial de conformidad con la Convención sobre el Reconocimiento y la Ejecución de las Sentencias Arbitrales Extranjeras (10 de junio de 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38) y el capítulo 2 de la Ley Federal de Arbitraje (9 U.S.C. § 201, *et seq.*), que confirme el Laudo y ordene que se inscriba la sentencia, así como los demás recursos posteriores que sean justos, apropiados y equitativos, junto con los costes y desembolsos de este procedimiento.

POR ESTE MEDIO INFORMAMOS TAMBIÉN QUE se notificarán la respuesta y las declaraciones juradas de apoyo, si las hubiere, al menos siete días antes de la fecha indicada para la audiencia.

Fecha: Nueva York, Nueva York
14 de diciembre de 2018

Atentamente,

*/s/* James E. Berger
James E. Berger
Charlene C. Sun
KING & SPALDING LLP
1185 Avenue of the Americas
Nueva York, NY 10036-4003
Tel.: (212) 556-2200
Fax: (212) 556 -2222
jberger@kslaw.com
csun@kslaw.com

*Abogados de los Demandantes*

2

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 3

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

---

In the Matter of the Arbitration Between

FORESIGHT LUXEMBOURG SOLAR 1 S.À.R.L.

FORESIGHT LUXEMBOURG SOLAR 2 S.À.R.L.

GREENTECH ENERGY SYSTEMS A/S (NOW KNOWN AS ATHENA INVESTMENTS A/S)

GWM RENEWABLE ENERGY I S.P.A.

GWM RENEWABLE ENERGY II S.P.A.

Petitioners,

v.

THE KINGDOM OF SPAIN

Respondent.

Index No. _____

---

## AFFIRMATION OF CHARLENE C. SUN

Charlene C. Sun, an attorney duly admitted to practice before the courts of the State of New York, affirms the following to be true under penalty of perjury:

1.    I am of counsel to King & Spalding LLP, counsel to Petitioners herein.  I am a member in good standing of the Bar of the State of New York and am authorized to practice

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 3

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

before this Court. I have personal knowledge of the facts set forth herein, and could and would testify to them if called upon to do so.

2.     This affirmation is provided in support of Petitioners' Petition to Confirm Arbitral Award (the "Award") captioned SCC Arbitration V (2015/150) and rendered on November 14, 2018 in an arbitration between Petitioners and Respondent, the Kingdom of Spain ("Spain") under the Arbitration Rules of the Arbitration Institute of the Stockholm Chamber of Commerce, pursuant to the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention") and Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et seq.*

3.     Attached hereto as Exhibit A is a duly-certified copy of the Award and dissenting opinion.

4.     Attached hereto as Exhibit B is a true and correct copy of the Energy Charter Treaty ("ECT"), Article 26 of which provides that any disputes arising under the ECT may be submitted to arbitration "under the Arbitration Institute of the Stockholm Chamber of Commerce."

5.     Attached hereto as Exhibit C is a true and correct copy of the Petitioners' Request for Arbitration, dated November 2, 2015.

Dated: New York, New York
December 14, 2018

_____
Charlene C. Sun

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.
N.º DE ÍNDICE 656251/2018
DOC de la NYSCEF. N.º 3                                          RECIBIDO POR EL NYSCEF: 14/12/2018

# TRIBUNAL SUPREMO DEL ESTADO DE NUEVA YORK
# CONDADO DE NUEVA YORK: DIVISIÓN COMERCIAL

En el caso de arbitraje entre

FORESIGHT LUXEMBOURG SOLAR 1 S.À.R.L.
FORESIGHT LUXEMBOURG SOLAR 2 S.À.R.L.
GREENTECH ENERGY SYSTEMS A/S, (AHORA LLAMADO ATHENA INVESTMENTS A/S)
GWM RENEWABLE ENERGY I S.P.A.
GWM RENEWABLE ENERGY II S.P.A.

N.º de índice _____

Demandantes,

vs.

REINO DE ESPAÑA

Demandado.

## DECLARACIÓN DE CHARLENE C. SUN

Charlene C. Sun, una abogada debidamente autorizada para litigar en los tribunales del Estado de Nueva York, afirma que la siguiente declaración es cierta bajo pena de perjurio:

1.      Soy una abogada de King & Spalding LLP, despacho que representa a los Demandantes del presente. Soy una miembro de buena reputación del Colegio de Abogados del

1

PRESENTADO ANTE: SECRETARIO DEL CONDADO DE NUEVA YORK 14/12/2018 04:48 p. m.

N.° DE ÍNDICE 656251/2018

DOC de la NYSCEF. N.° 3                                    RECIBIDO POR EL NYSCEF: 14/12/2018

Estado de Nueva York y estoy autorizada para litigar en este Tribunal. Tengo conocimiento personal de los hechos que se establecen en el presente documento, y podría brindar o brindaré testimonio al respecto de ser requerida a hacerlo.

2.      Esta declaración se presenta en apoyo de la Petición de los Demandantes para confirmar el laudo arbitral (el "Laudo") titulado SCC Arbitraje V (2015/150) y dictado el 14 de noviembre de 2018 en el procedimiento de arbitraje entre los Demandantes y el Demandado, el Reino de España ("España") conforme a las Normas de Arbitraje del Instituto de Arbitraje de la Cámara de Comercio de Estocolmo, de conformidad con la Convención de las Naciones Unidas sobre el Reconocimiento y la Ejecución de las Sentencias Arbitrales Extranjeras (10 de junio de 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (la "Convención de Nueva York") y el capítulo 2 de la Ley Federal de Arbitraje ("LFA"), 9 U.S.C. §§ 201 *et seq.*

3.      Se adjunta al presente documento como el Anexo A una copia debidamente certificada del Laudo y de la opinión disidente.

4.      Se adjunta al presente documento como el Anexo B una copia fiel y exacta del Tratado de la Carta de Energía ("TCE"), cuyo artículo 26 establece que cualquier conflicto derivado del TCE puede ser sometido al arbitraje "conforme al Instituto de Arbitraje de la Cámara de Comercio de Estocolmo".

5.      Se adjunta al presente documento como el Anexo C una copia fiel y exacta de la Solicitud de arbitraje de los Demandantes, con fecha del 2 de noviembre de 2015.

Fecha: Nueva York, Nueva York

14 de diciembre de 2018

_____

[Firma]

Charlene C. Sun

2


TRANSPERFECT

City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify that the document titled, "2018-12-14 [Dkt 03] Affirmation of Charlene Sun" with index number **656251/2018** is, to the best of my knowledge and belief, a true and accurate translation from English into Spanish (ES).

_____
Aurora Landman

Sworn to before me this
December 20, 2018

_____
Signature, Notary Public

WENDY POON
NOTARY
NO. 01PO6356754
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
04-03-2021
PUBLIC
STATE OF NEW YORK

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 40TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 4

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

SCC ARBITRATION V (2015/150)

IN THE MATTER OF AN ARBITRATION UNDER THE ENERGY CHARTER TREATY AND THE
ARBITRATION RULES OF THE ARBITRATION INSTITUTE OF THE STOCKHOLM CHAMBER
OF COMMERCE (2010)

In the arbitration proceeding between

**(1) FORESIGHT LUXEMBOURG SOLAR 1 S.À.R.L.**
**(2) FORESIGHT LUXEMBOURG SOLAR 2 S.À.R.L.**
**(3) GREENTECH ENERGY SYSTEMS A/S**
**(4) GWM RENEWABLE ENERGY I S.P.A.**
**(5) GWM RENEWABLE ENERGY II S.P.A.**

Claimants

-and-

**THE KINGDOM OF SPAIN**

Respondent

---

**FINAL AWARD**

---

**Members of the Tribunal**

Dr Michael Moser, Chairperson

Prof Dr Klaus Michael Sachs, Co-Arbitrator

Dr Raúl Emilio Vinuesa, Co-Arbitrator

**ARBITRATION INSTITUTE OF THE**
**STOCKHOLM CHAMBER OF COMMERCE**
Certified true copy of original

Date 13 DECEMBER 2018

**Administrative Secretary to the Tribunal**
Mr Paul Barker

**Date**

14 November 2018


ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM    INDEX NO. 656251/2018
NYSCEF DOC. NO. 4                                          RECEIVED NYSCEF: 12/14/2018

## REPRESENTATION OF THE PARTIES

Counsel for Claimants:

Counsel for Respondent:

**King & Spalding**

Mr. Kenneth R. Fleuriet
Ms. Amy Roebuck Frey

12, cours Albert Ier
75008 Paris
France

Mr. Reginald R Smith
Mr. Kevin D Mohr

1100 Louisiana, Suite 4000
Houston, Texas 77002
USA

**Gómez-Acebo & Pombo**

Ms. Verónica Romaní Sancho
Mr. Gonzalo Ardila Bermejo
Mr. Luis Gil Bueno
Ms. Inés Vázquez García

Satellana, 216
28046 Madrid
Spain

**Abogacía General del Estado-Dirección
del Servicio Jurídico del Estado**

Don Fernando Irurzun
Don Diego Santacruz
Don Javier Torres
Doña Monica Moraleda
Doña Amaia Rivas
Don Antolín Fernandez
Doña Elena Oñoro
Doña Esther de Benito
Doña Ana María Rodriguez

C/ Ayala nº 4, 28001
Madrid
España



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

i

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM          INDEX NO. 656251/2018
NYSCEF DOC. NO. 4                                         RECEIVED NYSCEF: 12/14/2018

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | | INTRODUCTION AND PARTIES ................................................................ 1 | |
| II. | | PROCEDURAL HISTORY ...................................................................... 2 | |
| | A. | The Request and Constitution of the Tribunal.................................... 2 | |
| | B. | First Procedural Conference.............................................................. 4 | |
| | C. | The Parties' Written Submissions and Procedural Applications .......... 4 | |
| | D. | The Non-Disputing Party Application ................................................. 5 | |
| | E. | The Oral Procedure........................................................................... 6 | |
| | F. | The Post-Hearing Procedure ............................................................. 8 | |
| III. | | THE ENERGY CHARTER TREATY.............................................................10 | |
| IV. | | FACTUAL BACKGROUND........................................................................11 | |
| | A. | Overview ..........................................................................................11 | |
| | B. | Regulatory Framework ......................................................................15 | |
| | | (1) | Hierarchy of regulatory measures under Spanish law...............15 |
| | | (2) | Evolution of Spain's renewable energy regulatory framework prior to the disputed measures ....................................................15 |
| | | (i) | Law 54/1997.......................................................................15 |
| | | (ii) | Royal Decree 2818/1998.......................................................16 |
| | | (iii) | 2000-2010 Renewable Energies Promotion Plan (1999 PER)..16 |
| | | (iv) | Royal Decree 436/2004.........................................................17 |
| | | (v) | Renewable Energies Plan 2005-2010 (2005 PER)...................18 |
| | | (vi) | Royal Decree 661/2007.........................................................18 |
| | | (vii) | Royal Decree 1578/2008.......................................................22 |
| | | (viii) | Spain's PV capacity following enactment of RD 61/2007..........22 |
| | C. | Claimants' Investments ...................................................................22 | |
| | | (1) | Madridejos .........................................................................23 |
| | | (2) | La Castilleja........................................................................24 |
| | | (3) | Fotocampillos......................................................................25 |
| | | (4) | Consequences of GWM's takeover of Greentech....................25 |
| | D. | Spain's tariff deficit and the sustainability of the Spanish electricity system................................................................................................26 | |
| | E. | The Disputed Measures ...................................................................29 | |
| | | (i) | RD 1565/2010.....................................................................29 |
| | | (ii) | RDL 14/2010.......................................................................29 |
| | | (iii) | Law 15/2012.......................................................................29 |
| | | (iv) | RDL 2/2013.........................................................................30 |
| | | (v) | RDL 9/2013.........................................................................30 |
| | | (vi) | Law 24/2013, RD 413/2014 and MO IET/1045/2014 ...............31 |
| | F. | Claimants' sale of the PV plants ...............................................33 | |

ARBITRATION INSTITUTE
OF THE STOCKHOLM   ·MBER OF COMMERCE

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM   INDEX NO. 656251/2018
NYSCEF DOC. NO. 4                                   RECEIVED NYSCEF: 12/14/2018

G.     Spanish Domestic Court Decisions.................................................34

V.     REQUESTS FOR RELIEF..................................................................35
       A.     Claimants' Request for Relief ..........................................35
       B.     Respondent's Request for Relief .....................................35

VI.    JURISDICTION .................................................................................36
       A.     First Objection: The Intra-EU Objection ...........................36
              (1) The Parties' Positions..............................................37
              (2) The Tribunal's Analysis............................................47
       B.     Second Objection: The TVPEE Claim ...............................53
              (1) The Parties' Positions..............................................53
              (2) The Tribunal's Analysis............................................58

VII.   LIABILITY ........................................................................................60
       A.     Overview ..........................................................................60
       B.     Applicable Law .................................................................62
       C.     Fair and Equitable Treatment under Article 10(1) ECT ......62
              (1) The Parties' Positions..............................................63
              (2) The Tribunal's Analysis............................................83
       D.     The Claimants' Further Alleged Breaches of Article 10(1) ECT .........98
              (1) The Parties' Positions..............................................99
              (2) The Tribunal's Analysis...........................................102
       E.     Expropriation under Article 13 ECT ................................103
              (1) The Parties' Positions.............................................103
              (2) The Tribunal's Analysis...........................................105

VIII.  DAMAGES .......................................................................................107
       A.     Applicable Standard .......................................................107
       B.     Quantum of Compensation.............................................109
              (1) The Parties' Positions.............................................109
              (2) The Tribunal's Analysis...........................................119

IX.    COSTS ............................................................................................138
              (1) The Parties' Positions.............................................138
              (2) The Tribunal's Analysis...........................................139

X.     AWARD............................................................................................141



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

## I.    INTRODUCTION AND PARTIES

1.    This case concerns a dispute submitted to the Arbitration Institute of the Stockholm Chamber of Commerce (**SCC**) on the basis of the Energy Charter Treaty (**ECT**), which entered into force on 16 April 1998 for Luxembourg, Italy, Denmark and the Kingdom of Spain.

2.    The claimants are:

(a)    Foresight Luxembourg Solar 1 S.à.r.l. (**Foresight 1**) and Foresight Luxembourg Solar 2 S.à.r.l. (**Foresight 2**), which are private limited liability companies (société à responsabilité limitée) incorporated under the laws of Luxembourg, under the registration numbers B0146200 and B0151603, respectively;[1]

(b)    GWM Renewable Energy I S.p.A. (**GWM I**), a public company duly incorporated under the laws of Italy and listed in the commercial register in Rome under the registration number RM – 1305360,[2] and GWM Renewable Energy II S.p.A., which was originally incorporated under the laws of Italy and listed in the commercial register in Rome under the registration number RM – 1305410 but has since the filing of the Request for Arbitration changed its form into a limited liability company known as GWM Renewable Energy II S.r.l. (**GWM II**).[3]  On 30 June 2014, GWM I owned 71% of GWM II; and

(c)    Greentech Energy Systems A/S (**Greentech**), a publicly-listed company duly incorporated under the laws of Denmark and listed in the Danish commercial register under the registration number 36696915.[4] On 30 June 2014, GWM II owned 71% of Greentech.[5]

---

[1]    C-2, Registration Certificate of Foresight Luxembourg Solar 1 S.à.r.l. in the Luxembourg Commercial Register, 14 October 2015; C-3, Registration Certificate of Foresight Luxembourg Solar 2 S.à.r.l. in the Luxembourg Commercial Register, 14 October 2015.  Foresight 1 and Foresight 2 are owned by Foresight European Solar Fund LP, which is a fund of Foresight Group LLP, a London-based investment manager.

[2]    C-5, Registration Certificate of GWM Renewable Energy I S.p.A. in the Rome Commercial Register, 4 May 2015; C-6, Registration Certificate of GWM Renewable Energy II S.p.A. in the Rome Commercial Register, 4 May 2015.

[3]    C-184, GWM Renewable Energy II S.r.l. Entry in the Italian Business Register, 24 May 2016. The change in corporate form was carried out instead of the contemplated dissolution of GWM II. SoC, ¶ 7, n.6.  GWM I was named as a Claimant in this arbitration to claim as successor-in-interest in the event that GWM II was dissolved. Since that did not occur, GWM I's claims and interests in this arbitration are pursued through GWM II.

[4]    C-4, Registration Certificate of Greentech Energy Systems A/S in the Danish Commercial Register, 13 November 2014.

[5]    Request for Arbitration, 2 November 2015, ¶ 38, Annex A.



ARBITRATION INSTITUTE
OF THE STOCKHOLM   ~MBER OF COMMERCE

1

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

(Foresight 1, Foresight 2, GWM I, GWM II, and Greentech, together:
**Claimants**)

3.  The Respondent is the Kingdom of Spain (**Spain** or **Respondent**).

4.  The dispute concerns legislative and regulatory measures enacted by Spain relating to the renewable energy sector in that country.

## II.  PROCEDURAL HISTORY

5.  The Tribunal sees no need to recapitulate the entirety of the correspondence with counsel for the Parties over the course of these proceedings. All procedural orders have been reduced to writing and no useful purpose would be served by reproducing or summarizing them in this section of the Award. The key procedural events in the course of this arbitration are set out below.

### A.  The Request and Constitution of the Tribunal

6.  The Claimants commenced these proceedings by Request for Arbitration dated 2 November 2015.

7.  In their Request for Arbitration, the Claimants invoked Article 26 of the ECT, which provides as follows:

<div align="center">

**ARTICLE 26**

**SETTLEMENT OF DISPUTES BETWEEN AN INVESTOR AND A CONTRACTING PARTY**

</div>

(1)  Disputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be settled amicably.

(2)  If such disputes can not be settled according to the provisions of paragraph (1) within a period of three months from the date on which either party to the dispute requested amicable settlement, the Investor party to the dispute may choose to submit it for resolution:
(a)  to the courts or administrative tribunals of the Contracting Party to the dispute;
(b)  in accordance with any applicable, previously agreed dispute settlement procedure; or
(c)  in accordance with the following paragraphs of this Article.

(3)  (a) Subject only to subparagraphs (b) and (c), each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article.

(b)  (i) The Contracting Parties listed in Annex ID do not give such unconditional consent where the Investor has previously submitted the dispute under subparagraph (2)(a) or (b).



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

2

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

(ii) For the sake of transparency, each Contracting Party that is listed in Annex ID shall provide a written statement of its policies, practices and conditions in this regard to the Secretariat no later than the date of the deposit of its instrument of ratification, acceptance or approval in accordance with Article 39 or the deposit of its instrument of accession in accordance with Article 41.

(c)     A Contracting Party listed in Annex IA does not give such unconditional consent with respect to a dispute arising under the last sentence of Article 10(1).

(4)     In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to:

[…]

(c)     an arbitral proceeding under the Arbitration Institute of the Stockholm Chamber of Commerce.

[…]

(6)     A tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law.

8.      The Claimants confirmed their consent to arbitration under the ECT and submitted their dispute to the Arbitration Institute of the Stockholm Chamber of Commerce (**SCC**) in accordance with Article 26(4)(c) of the ECT.

9.      Accordingly, the procedural rules of this arbitration are the Rules of the Arbitration Institute of the Stockholm Chamber of Commerce, adopted by the SCC and in force as of 1 January 2010 (**SCC Rules**).

10.     On 3 December 2015, the Respondent served the Claimants with its Answer to the Request for Arbitration.

11.     The Tribunal is composed of Dr Michael Moser, appointed by the SCC as Chairperson pursuant to Article 13 of the SCC Rules; Professor Dr Klaus Sachs, appointed by the Claimants; and Dr Raúl Emilio Vinuesa, appointed by the Respondent.

12.     On 15 February 2016, the SCC determined pursuant to Article 20 of the SCC Rules that the seat of the arbitration is Stockholm, Sweden. In accordance with Article 20(2) of the SCC Rules, the Parties have agreed to hold hearings in Paris, France.



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

3

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM    INDEX NO. 656251/2018
NYSCEF DOC. NO. 4                                    RECEIVED NYSCEF: 12/14/2018

13.   On 5 May 2016, the First Session of the Arbitral Tribunal was held.

14.   On 21 November 2017, Mr Paul Barker was appointed Administrative Secretary to the Tribunal with the agreement of the Parties.

### B.   First Procedural Conference

15.   On 5 May 2016, the First Procedural Conference was convened by the Tribunal with representatives of the Parties via teleconference.

16.   Following the First Procedural Conference, on 10 May 2016, the Chairperson, on behalf of the Tribunal, issued Procedural Order No. 1 (**PO1**), which records inter alia: the general procedural rules for the arbitration; the Procedural Timetable and provisional dates for the hearing; the procedural rules applicable to written submissions, document production, non-expert evidence and expert evidence for all hearings; and the logistical arrangements for the hearing.

17.   PO1 also established that the Parties have agreed that English and Spanish are the procedural languages of the arbitration.

### C.   The Parties' Written Submissions and Procedural Applications

18.   On 30 September 2016, the Claimants submitted their Statement of Claim (**SoC**), accompanied by: (i) the Witness Statements of Mr Alessandro Reitelli (**Reitelli 1st**), Mr Federico Giannandrea (**Giannandrea 1st**), Mr Gabriele Bartolucci (**Bartolucci 1st**), and Mr Jamie Richards (**Richards 1st**), respectively; and (ii) the Expert Reports of Professor Manuel Aragón Reyes (**Aragón 1st**), Dr Boaz Moselle and Dr Dora Grunwald (**Moselle/Grunwald 1st**), Mr Richard Edwards (**Edwards 1st**), and Mr Jaume Margarit (**Margarit 1st**), respectively.

19.   On 17 February 2017, the Respondent submitted its Counter-Memorial on the Merits and Memorial on Jurisdictional Objections (**Counter-Memorial/Jurisdictional Memorial**), accompanied by: (i) the Witness Statement of Mr Carlos Montoya (**Montoya 1st**); and (ii) the Expert Reports of BDO (**BDO 1st**), and of Professors Dr. Pablo Pérez Tremps and Dr. Marcos Váquer Caballería (**Tremps/Váquer 1st**), respectively.

20.   On 21 April 2017, the Parties submitted their respective document production requests to the Tribunal in the form of Redfern Schedules.



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

4

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

21. On 4 May 2017, the Tribunal issued Procedural Order No. 2 containing the Tribunal's Ruling on Requests for Document Production.

22. On 2 June 2017, the Parties produced documents as ordered by the Tribunal.

23. On 21 July 2017, the Claimants submitted their Reply Memorial on the Merits and Counter-Memorial on Jurisdiction (**Reply/Counter-Memorial**), accompanied by: (i) the Second Witness Statements of Mr Alessandro Reitelli (**Reitelli 2nd**), Mr Federico Giannandrea (**Giannandrea 2nd**), Mr Gabriele Bartolucci (**Bartolucci 2nd**), and Mr Jamie Richards (**Richards 2nd**), respectively; and (ii) the Second Expert Reports of Professor Manuel Aragón Reyes (**Aragón 2nd**), Dr Boaz Moselle and Dr Dora Grunwald (**Moselle/Grunwald 2nd**), Mr Richard Edwards (**Edwards 2nd**), and Mr Jaume Margarit (**Margarit 2nd**), respectively.

24. On 1 November 2017, the Respondent submitted its Rejoinder on the Merits and Reply on Jurisdiction (**Rejoinder/Reply**), accompanied by: (i) the Second Witness Statement of Mr Carlos Montoya (**Montoya 2nd**); and (ii) the Second Expert Reports of BDO (**BDO 2nd**), and of Professors Dr Pablo Pérez Tremps and Dr Marcos Váquer Caballería (**Tremps/Váquer 2nd**), respectively. In its Rejoinder and Reply, the Respondent withdrew one of the jurisdictional objections made in its Counter-Memorial/Jurisdictional Memorial concerning the Claimants' claim for damages.[6]

25. On 10 November 2017, the Claimants submitted their Rejoinder on Jurisdiction (**Rejoinder on Jurisdiction**).

26. On 18 January 2018, the Tribunal issued Procedural Order No. 3 concerning the organization of the oral hearing.

**D.    The Non-Disputing Party Application**

27. On 3 March 2017, the European Commission (**Commission**) applied to the Tribunal for leave to intervene as a non-disputing party (**Commission's Application**).

28. On 7 March 2017, the Tribunal invited the Parties to comment on the Commission's Application by 17 March 2017.

---

[6]    Rejoinder/Reply, n. 1.



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

5

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM  INDEX NO. 656251/2018
NYSCEF DOC. NO. 4                                        RECEIVED NYSCEF: 12/14/2018

29.    On 17 March 2017, the Claimants submitted their Response to the Commission's Application and the Respondent submitted its Observations on the Commission's Application, respectively.

30.    On 27 March 2017, the Tribunal issued its Decision on the Commission's Application for Leave to Intervene as a Non-Disputing Party, granting the Commission leave to file a written amicus curiae submission and denying the Commission leave to present its views at any oral hearing.

31.    On 29 June 2017, the Tribunal granted the Commission's request to file an amicus curiae brief on issues of jurisdiction in the arbitration.

32.    On 20 July 2017, the Commission filed its amicus curiae brief (**Amicus Brief**).

### E.    The Oral Procedure

33.    On 22-26 January 2018, the Hearing on Jurisdiction and Merits (**Hearing**) was held at the ICC's hearing facility in Paris.

34.    The following persons were present at the Hearing:

**Tribunal**

| | |
|---|---|
| Dr. Michael Moser | President |
| Prof. Dr. Klaus Michael Sachs | Co-Arbitrator |
| Dr. Raúl Emilio Vinuesa | Co-Arbitrator |

**Administrative Secretary to the Tribunal**

Mr. Paul Barker

**For the Claimants**

*Counsel:*

| | |
|---|---|
| Mr. Kenneth R. Fleuriet | King & Spalding |
| Mr. Reginald R. Smith | King & Spalding |
| Mr. Kevin D. Mohr | King & Spalding |
| Ms. Héloïse Hervé | King & Spalding |
| Mr. Enrique J. Molina | King & Spalding |
| Ms. Isabel San Martin | King & Spalding |
| Mr. Antoine Weber | King & Spalding |
| Mr. Luis Antonio Gil Bueno | Gómez-Acebo & Pombo |
| Ms. Inés Vázquez Garcia | Gómez-Acebo & Pombo |



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

6

Ms. Beatriz Fernández-Miranda de León   Gómez-Acebo & Pombo

*Parties:*
Mr. Jamie Richards                       Foresight Group, Partner
Mr. Federico Giannandrea                 Foresight Group, Partner
Mr. Gabriele Bartolucci                  GWM Group and Greentech Energy
                                         Systems A/S, General Counsel
Mr. Alessandro Reitelli                  Greentech Energy Systems A/S, CEO


*Witnesses:*
Mr. Jamie Richards                       Foresight Group, Partner
Mr. Gabriele Bartolucci                  GWM Group and Greentech Energy
                                         Systems A/S, General Counsel

*Experts:*
Mr. Jaume Margarit                       Independent    Consultant,    formerly
                                         Director of Renewable Energy at the
                                         IDAE
Dr. Manuel Aragón Reyes                  Autonomous    University   of   Madrid
                                         (Professor of Constitutional Law)
Dr. Boaz Moselle                         Cornerstone Research
Dr. Dora Grunwald                        FTI Consulting
Mr. Richard Edwards                      FTI Consulting
Mr. Joel Franks                          FTI Consulting
Ms. Kristina Danilova                    FTI Consulting
Mr. Jose Alzate                          FTI Consulting


**For the Respondent**

*Counsel:*
Diego Santacruz Descartín                Abogacía General del Estado
Antolín Fernández Antuña                 Abogacía General del Estado
Elena Oñoro Sáinz                        Abogacía General del Estado
Mónica Moraleda Saceda                   Abogacía General del Estado
Yago Fernández Badía                     Abogacía General del Estado
Patricia Iglesias Rey                    Abogacía General del Estado


*Parties:*
Raquel Vázquez Meco                      Instituto para la Diversificación y Ahorro
                                         Energético
*Witness:*
Carlos Montoya Rasero                    Instituto para la Diversificación y Ahorro
                                         Energético


*Experts:*
Professor Dr. Pablo Pérez Tremps         Universidad Carlos III de Madrid
Professor Dr. Marcos Váquer Caballería   Universidad Carlos III de Madrid

ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

7

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM          INDEX NO. 656251/2018
NYSCEF DOC. NO. 4                                          RECEIVED NYSCEF: 12/14/2018

| Eduardo Pérez Ruíz | BDO |
| Javier Espel | BDO |
| David Mitchell | BDO |
| Susan Blower | BDO |
| Manuel Alejandro Vargas | BDO |

35.   The following persons were examined during the Hearing:

| Mr. Jamie Richards | Foresight Group, Partner |
| Mr. Gabriele Bartolucci | GWM Group and Greentech Energy Systems A/S, General Counsel |
| Mr. Jaume Margarit | Independent Consultant, formerly Director of Renewable Energy at the IDAE |
| Dr. Manuel Aragón Reyes | Autonomous University of Madrid (Professor of Constitutional Law) |
| Dr. Boaz Moselle | Cornerstone Research |
| Dr. Dora Grunwald | FTI Consulting |
| Mr. Richard Edwards | FTI Consulting |
| Mr. Carlos Montoya Rasero | Instituto para la Diversificación y Ahorro Energético |
| Professor Dr. Pablo Pérez Tremps | Universidad Carlos III de Madrid |
| Professor Dr. Marcos Váquer Caballería | Universidad Carlos III de Madrid |
| Mr. Eduardo Pérez Ruíz | BDO |
| Mr. David Mitchell | BDO |

36.   On 6 April 2018, the Claimant submitted the Hearing transcripts with corrections agreed by the Parties.

**F.    The Post-Hearing Procedure**

37.   On the final day of the Hearing, the Tribunal directed that the Parties simultaneously exchange post-hearing briefs on 18 May 2018 and reply post-hearing briefs on 8 June 2018.   The Tribunal further directed the Parties to simultaneously exchange costs submissions on 22 June 2018.

38.   On 2 February 2018, further to discussions between the Parties and the Tribunal at the conclusion of the Hearing on 26 January 2018, the Claimants made an application to the Tribunal in respect of (i) calculations requested of BDO during cross examination at the Hearing; and (ii) new calculations submitted in slide 36 of BDO's presentation at the Hearing.   On 9 February 2018, the Respondent submitted comments on the Claimants' application, in



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAM-.     :F COMMERCE

8

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 4

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

which the Respondent raised objections to the Claimants' requests.   On 14 February 2018, the Tribunal directed the Respondent to provide the Claimant with the information and calculations requested but denied the Claimants' request that BDO slide 36 be excluded from the record.

39.     On 5 April 2018, the Respondent wrote to the Tribunal requesting that the final judgment of the Court of Justice of the European Union in *Slowakische Republik v Achmea* BV dated 6 March 2018 (*Achmea*) be entered into the record and that the Parties be permitted to make comments on the judgment in their post-hearing brief.[7]  On 12 April 2018, the Claimants wrote to the Tribunal confirming their agreement to enter the *Achmea* judgment into the record on condition that the recent ECT award in *Novenergia II – Energy & Environment (SCA), SICAR v. Kingdom of Spain* (*Novenergia*) also be entered into the record.[8]  On 18 April 2018, the Tribunal admitted the new cases into the record.

40.     On 18 May 2018, the Parties exchanged post-hearing briefs (**Claimants' PHB** and **Respondent's PHB**, respectively).   The Respondent also submitted BDO's responses to the Claimants' questions pursuant to the Tribunal's order of 14 February 2018 (**Supplemental BDO Report**).   In their cover letter submitting their post-hearing brief, the Claimants notified the Tribunal that the award in *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain* (*Masdar*), which addresses the *Achmea* judgment, had been made public earlier that same day.[9]  The Claimants stated their intention to address the *Masdar* award in their reply post-hearing brief.

41.     On 13 June 2018, the Parties exchanged reply post-hearing briefs (**Claimants' Reply PHB** and **Respondent's Reply PHB**, respectively).

42.     On 14 June 2018, the Respondent wrote to the Tribunal to complain that the Claimants' submissions in their reply post-hearing brief on the *Masdar* award amounted to "ambush" in violation of PO1. On 19 June 2018, the Claimants wrote to the Tribunal, pointing out inter alia that they had in their cover letter of 18 May 2018 given the Respondent notice of their intention to address the *Masdar* award.  On 22 June 2018, the Tribunal wrote to the Parties stating that

---

[7]     CL-184/RL-96, European Court of Justice (Grand Chamber), *Slowakische Republik v. Achmea B.V.*, ECJ Case C-284/16, Preliminary Ruling, 6 Mar. 2018.

[8]     CL-185, *Novenergia II – Energy & Environment (SCA), SICAR v. Kingdom of Spain*, SCC Arb. 2015/063, Final Award.

[9]     CL-189, *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, ICSID Case No. ARB/14/1, Award.

the *Masdar* award is admitted into the record and granting the Respondent until 25 June 2018 to submit brief comments on the *Masdar* award.

43.     On 21 June 2018, the Respondent wrote to the Tribunal alleging that the Claimants had violated PO1 by disclosing information regarding the Respondent's document production in this arbitration to the law firm Allen & Overy, who act as counsel for investors in other renewables arbitrations against Spain. On 26 June 2018, the Claimants wrote to the Tribunal to deny that they had violated PO1 or any other applicable rule. On 28 June 2018, the Tribunal wrote to the Parties stating that it had noted the points advanced and had decided to make no order.

44.     On 25 June 2018, the Respondent submitted its Comments on the *Masdar* award.

45.     On 27 June 2018, the Parties submitted their costs submissions to the Tribunal.

46.     On 27 June 2018, the Respondent wrote to the Tribunal requesting that the Claimants provide additional information as to their costs submission.

47.     On 6 July 2018, the Claimants wrote to the Tribunal stating that they had provided the necessary information in relation to their legal fees and requesting that the Tribunal deny the Respondent's request of 27 June 2018.

48.     On 13 July 2018, the Tribunal wrote to the Parties stating that the issue of costs would be dealt with in the Final Award. The Tribunal declined to make any further order at that time.

49.     On 19 October 2018, the Tribunal declared the proceeding closed.

## III.     THE ENERGY CHARTER TREATY

50.     The ECT was signed in December 1994 and entered into force in April 1998. The ECT has been signed or acceded to by fifty-two states (including Luxembourg, Italy, Denmark and Spain), the European Union (**EU**) and Euratom.

51.     The Energy Charter Secretariat's Guide summarizes the ECT's purpose in the following way:

> According to Article 2 of the ECT, the purpose of the Treaty is to establish a legal framework in order to promote long-term cooperation in the energy field,



ARBITRATION INSTITUTE                    10
OF THE STOCKHOLM CHAMBER OF COMMERCE

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

based on complementarities and mutual benefits, in accordance with the objectives and principles of the Energy Charter. It is a milestone in international energy cooperation. By creating a stable, comprehensive and nondiscriminatory legal foundation for cross-border energy relations, the ECT reduces political risks associated with economic activities in transition economies. It creates an economic alliance between countries with different cultural, economic and legal backgrounds, but all united in their commitment to achieve the following common goals:

- To provide open energy markets, and to secure and diversify energy supply;
- To stimulate cross-border investment and trade in the energy sector;
- To assist countries in economic transition in the development of their energy strategies and of an appropriate institutional and legal framework for energy, and in the improvement and modernisation of their energy industries.[10]

## IV.    FACTUAL BACKGROUND

52.    The Tribunal will begin by summarizing the factual background to this dispute, including the applicable Spanish legal framework, the Claimants' investments in Spain, and the disputed measures.

### A.    Overview

53.    The Claimants' claims concern certain legislative and regulatory measures introduced by Spain since 2007 to support investment in renewable electricity generation. The measures were intended to enable Spain to meet national and EU level targets for electricity generation from renewable energy. In particular, Directive 2001/77/EC of the European Parliament and Council of 27 September 2001 (**Directive 2001/77/EC**) set Spain an indicative target for electricity energy generation from renewables at 29.4% of total electricity consumption by 2010.[11] Pursuant to Directive 2009/28/EC of the European Parliament and Council of 23 April 2009 (**Directive 2009/20/EC**), this indicative target was later replaced by a mandatory target for renewable energy consumption set at 20% of Spain's total energy consumption by 2020.[12] These EU directives were transposed by Spain into its domestic law; as a Member State of the EU, Spanish law is rooted in fundamental criteria established by EU law.[13] The

---

[10]    CL-171, Energy Charter Secretariat, the Energy Charter Treaty – A Reader's Guide, 2002, p.9.
[11]    C-57, Directive 2001/77/EC of the European Parliament and of the Council of 27 September 2001 on the promotion of electricity produced from renewable energy sources in the internal electricity market ("Directive 2001/77/EC").
[12]    RL-17, Directive 2009/28/EC of the European Parliament and of the Council of 23 April 2009 on the promotion of the use of energy from renewable sources and amending and repealing Directives 2001/77/CE and 2003/30/EC.
[13]    Tr. Day 2, 117:22-23.


ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

11

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

broader context of the EU's and Spain's measures was the international effort to reduce greenhouse gas emissions, most notably in the Kyoto Protocol 1997, pursuant to which signatories, including the EU and Spain, accepted ambitious targets for emissions reductions.

54.   Between 8 May 2009 and 7 May 2010,[14] the Claimants acquired Spanish companies that operated three solar photovoltaic (**PV**) facilities registered under Royal Decree 661/2007 (**RD 661/2007**),[15] a renewables support scheme enacted by Spain to achieve its renewable electricity target under Directive 2001/77/EC. Two salient features of RD 661/2007 were that it established fixed Feed in Tariffs (**FiTs**) for qualifying PV facilities – ostensibly to be paid for the lifetime of the facility – and priority of access and dispatch to the electricity grid.

55.   It is important to appreciate that RD 661/2007 was a regulatory instrument and therefore subordinate as a matter of Spanish law to the relevant Act of Parliament (**Law**) that established the general regulatory framework for the Spanish electricity system (**SES**). That was Law 54/1997, which liberalized the SES and updated the parameters of Spain's legal regime, both for conventional energy generation (termed the "**Ordinary Regime**") and for renewable energy production and supply (the "**Special Regime**").[16] The RD 661/2007 support scheme operated within the broad framework established by Law 54/1997. Of particular relevance to the Parties' dispute, Law 54/1997 also provided that investors under the Special Regime would receive a "reasonable rate[] of return with regard to the cost of money in the capital markets".[17] However, Law 54/1997 did not specify what this reasonable rate of return should be. That was left to regulations like RD 661/2007.

56.   RD 661/2007 succeeded in attracting significant investment in renewables; within just four months of its enactment, installed PV capacity reached 85% of the target set by RD 661/2007.[18] But RD 661/2007 also coincided with – and indeed exacerbated – a widening gap between regulated electricity access charges (i.e. the amount retail customers paid for their electricity) and the

---

14   Claimants' Opening Presentation, slide 85.
15   C-98, Royal Decree 661/2007 of 25 May 2007, regulating the activity of electrical energy generation by means of renewable facilities ("RD 661/2007").
16   C-66, Law 54/1997, of 27 November 1997, on the Electric Power Sector ("Law 54/1997").
17   C-66, Law 54/1997, Art. 30.4.
18   SoC, ¶ 191.



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

regulated costs of the SES (which includes the costs of renewables support schemes). This shortfall is known as the "tariff deficit".

57. The Claimants take issue with a number of measures that were subsequently enacted by Spain, purportedly to eliminate the tariff deficit. The Claimants contend that these measures materially reduced the returns on their investments. In particular, between 2010 and 2013, Spain modified the incentives available to PV facilities registered under RD 661/2007. Then, in 2013-2014, Spain repealed and replaced RD 661/2007 with what the Claimants term the "New Regulatory Regime", which inter alia replaced the fixed FiTs for PV facilities with remuneration designed to achieve a "reasonable rate of return" for a "standard plant" of the relevant type, as defined by Spain. The "reasonable rate of return" was initially set by Spain at the ten-year average of Spanish Government bond yields plus 3%, which was 7.398% (pre-tax). However, the Respondent contends that the New Regulatory Regime in fact maintained the essential characteristics of RD 661/2007, including the payment of a "subsidy" and priority of access to the grid.

58. The key measures at issue in this arbitration are summarized in the following table:

| | Legislation | Measure | Date |
|---|---|---|---|
| **Renewables support scheme in which Claimants' PV facilities were enrolled** | RD 661/2007[19] | For registered PV facilities, established inter alia: (i) fixed FiTs that were not linked to market rate movements; (ii) targets for installed PV capacity; and (iii) priority grid access.<br><br>Closed to new entrants on 29 September 2008.<br><br>RD 661/2007 was replaced on 26 September 2008 by **RD 1578/2008**, which established new, lower FiTs and annual capacity quotas for PV facilities registered after 29 September 2008. | 25 May 2007 |
| **Disputed measures modifying incentives under** | RD 1565/2010[20] | Duration of RD 661/2007 FiTs reduced from lifetime of PV facility to 25 years (subsequently extended to 28 years by RDL 14/2010 and to 30 years by Law 2/2011). | 19 November 2010 |

---

[19]  C-66, Law 54/1997.
[20]  C-129, Royal Decree 1565/2010, of 19 November 2010, regulating and amending certain aspects related to the activity of generating electricity under the special regime ("RD 1565/2010").



FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

| RD 661/2007 (and under RD 1578/2008) | RDL 14/2010[21] | Imposes cap on annual production (operating hours) for PV facilities entitled to receive FiTs. Introduces access toll of 0.5 €/MWh for electricity fed into the grid. | 23 December 2010 |
|---|---|---|---|
| | Law 15/2012[22] | Introduction of 7% tax on electricity generation revenue. | 27 December 2012 |
| | RDL 2/2013[23] | Changes inflation index used to update FiTs annually from the general CPI to CPI at constant taxes excluding unprocessed food and energy products. | 1 February 2013 |
| Disputed measures repealing and replacing RD 661/2007 (and RD 1578/2008) support scheme<br><br>Described by Claimants as the "New Regulatory Regime" | RDL 9/2013[24] | Repeals the RD 661/2007 and RD 1578/2008 support schemes. Nevertheless, RD 661/2007 and RD 1578/2008 remuneration schemes remained in place pending elaboration in June 2014 of the "New Regulatory Regime" (see RD 413/2014 and MO 1045/2014 below). However, all remuneration paid between July 2013 and June 2014 under RD 661/2007 and RD 1578/2010 schemes was made subject to claw-back under the New Regulatory Regime. | 12 July 2013 |
| | Law 24/2013[25] | Reforms regulatory framework. Explicitly recognizes the "principle of economic sustainability" of the SES. | 26 December 2013 |
| | RD 413/2014;<br><br>MO 1045/2014[26] | Replaces FiT for PV facilities registered under RD 661/2007 and RD 1578/2008 with remuneration at a "reasonable rate of return" applicable to the relevant type of "standard plant", based on the 10-year average of Spanish Government bond yields plus 3% (initially, 7.398% pre-tax). | 6 June 2014; 16 June 2014 |

60.   The background facts pertaining to these measures, as well as the broader regulatory framework, are discussed in greater specificity under sub-sections B and D below.

---

[21]  C-102, Royal Decree-Law 14/2010, of 23 December 2010, establishing urgent measures for the correction of the tariff deficit of the electricity sector ("RDL 14/2010").

[22]  C-40, Law 15/2012, of 27 December 2012, on tax measures for energy sustainability ("Law 15/2012").

[23]  C-83, Royal Decree-Law 2/2013, of 1 February 2013, on urgent measures in the electricity system and in the financial sector ("RDL 2/2013").

[24]  C-91, Royal Decree-Law 9/2013, of 12 July 2013, enacting urgent measures to ensure the financial stability of the electricity system ("RDL 9/2013").

[25]  C-180, Law 24/2013, of 26 December 2013, on the Electric Sector ("Law 24/2013").

[26]  C-90, Royal Decree 413/2014, of 6 June 2014, regulating the activity of electrical power generation by means of renewable energy, cogeneration and waste sources ("RD 413/2014"); C-179, Ministerial Order IET/1045/2014, of 16 June 2014, approving the remuneration parameters of standard facilities applicable to certain facilities of electrical power generation by means of renewable energy, cogeneration and waste sources ("MO 1045").

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 4

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

B.    **Regulatory Framework**

*(1)    Hierarchy of regulatory measures under Spanish law*

61.    The SES is regulated under Spanish law by the following instruments, in order of hierarchy: (i) the Spanish Constitution of 1978; (ii) Acts of the Spanish Parliament; (iii) Royal Decree-Laws, which have the force of an Act and may be enacted by the Government in situations of extraordinary need or urgency; (iv) Royal Decrees, which are regulations issued by the Government pursuant to powers granted by an Act; (v) Ministerial Orders, which are issued by ministerial departments (such as the Ministry of Industry, Energy and Tourism) to implement Royal Decrees; and (vi) Resolutions, which are issued by Government to also implement Royal Decrees.  Finally, in the context of the SES, there are renewable energy plans, which are regulatory standard-setting instruments drawn up by the regulator.

*(2)    Evolution of Spain's renewable energy regulatory framework prior to the disputed measures*

62.    Spain has a longstanding commitment to the promotion of renewable energy. In 1994, Spain enacted RD 2366/1994 creating the Special Regime, which is the name given to Spain's legal framework for qualifying renewable energy facilities.[27]

63.    The Tribunal summarizes below the relevant key legislative and regulatory developments that occurred prior to the disputed measures, from Spain's liberalization of its electricity market in late 1997 to the enactment of the RD 661/2007 support scheme under which the Claimants' PV facilities were registered.

(i)    Law 54/1997

64.    In November 1997, Spain enacted Law 54/1997 to transpose into Spanish law EU Directive 96/92/EC on the internal market in electricity.  To that end, Law 54/1997 liberalized Spain's electricity sector – particularly energy generation (production) and supply – and also committed Spain to produce 12% of its total energy demand from renewables by 2010.[28]

---

[27]    R-55, Royal Decree 2366/1994, 9 December 1994.
[28]    C-66, Law 54/1997, Preamble ¶¶ 4-5, 16th Transitory Provision.



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

15

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM   INDEX NO. 656251/2018
NYSCEF DOC. NO. 4                                    RECEIVED NYSCEF: 12/14/2018

65.     Law 54/1997 established the essential characteristics of Spain's regulatory
        framework governing the electricity sector, as well as the limits of the regulatory
        power of the Spanish government.[29]  Notwithstanding the creation of a free
        market system, Law 54/1997 provided that incentives would be offered in order
        to promote investment in renewable energy facilities. Specifically, Law 54/1997
        provided that remuneration of electricity producers under the Special Regime
        would be supplemented by a "premium" that would be established in
        subsequent regulations so as to achieve "reasonable rates of return with regard
        to the cost of money in the capital market."[30]

66.     In order to achieve its 12% renewables target by 2010, Law 54/1997 called for
        the drawing up of a renewable energies promotion plan that would be taken
        into account in the setting of the premiums for renewable energy producers.[31]

                    (ii)     Royal Decree 2818/1998

67.     In December 1998, Spain enacted Royal Decree 2818/1998 to implement the
        specific parameters of Law 54/1997 applicable to the Special Regime, including
        a remuneration framework whereby renewable electricity producers could elect
        to receive either: (i) a FiT for each kWh produced; (ii) or a premium to the
        market price of the energy produced.[32]  RD 2818/1998 did not prescribe
        specific levels of remuneration for an individual facility.

                    (iii)    2000-2010 Renewable Energies Promotion Plan (1999
                             PER)

68.     Pursuant to the requirement under Law 54/1997, in December 1999 a
        renewable energies promotion plan for the 2000-2010 period (**1999 PER**) was
        prepared by the Institute for Energy Diversification and Savings (**IDAE**), an
        agency of the Spanish government.  The plan proposed that a remuneration
        scheme be developed through regulations in order to meet the EU's indicative
        target that Spain produce 12% of its total energy demand from renewables by
        2010.  On 30 December 1999, the plan was approved by Spain's Council of
        Ministers.

---

[29]   Hr. Day 1, 157:14-18.
[30]   C-66, Law 54/1997, Art. 30.4.
[31]   C-66, Law 54/1997, 16th Transitory Provision.
[32]   C-67, Royal Decree 2818/1998.



ARBITRATION INSTITUTE                    16
OF THE STOCKHOLM CHAMBER OF COMMERCE

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM

NYSCEF DOC. NO. 4

INDEX NO. 656251/2018

RECEIVED NYSCEF: 12/14/2018

(iv)    Royal Decree 436/2004

69.    On 27 September 2001, the European Parliament and Council adopted Directive 2001/77/EC, which set Spain an indicative target for renewable energy generation at 29.4% of total electricity consumption by 2010.

70.    However, the RD 2818/1998 support scheme failed to attract a sufficient level of investment in renewable energy for Spain to meet its targets. By 2004, Spain had achieved only 56.2% of its 2006 objective for renewable electricity production, and only 28.4% of its target for 2010.[33]

71.    In February 2003, the Renewable Energies' Producers Association (**APPA**), which represents over 500 Spanish renewable energy companies, published a report that recommended improvements to the RD 2818/1998 support scheme. APPA recommended that: (i) incentives for certain technologies, including solar PV, be increased in order to guarantee an adequate return on investment; and (ii) incentives be explicitly guaranteed for the life of the investment.[34]

72.    In April 2003, Spain's energy regulator, the National Energy Commission (**CNE**), likewise concluded that it was necessary to increase remuneration and also to guarantee incentives throughout the facilities' useful life, in order to encourage sufficient investment and hit Spain's renewables targets.[35]

73.    In March 2004, Spain enacted RD 436/2004, a new renewables support scheme that addressed several perceived shortcomings of RD 2818/1998. The purpose of RD 436/2004 as articulated in its preamble was to provide "security and stability" and to establish a "long-lasting, objective, transparent regulatory framework" in order to promote investment in renewable electricity generation.[36]

74.    Like RD 2818/1998, RD 436/2004 gave eligible electricity producers the option to elect to receive either: (i) a FiT; or (ii) the market price plus an incentive for

---

[33]   C-74, Kingdom of Spain, Report on the Achievement of National Indicative Targets for Renewable Electricity Consumption in 2010 ("2005 Progress Report"), March 2006.

[34]   C-70, Renewable Energy Producers Association (APPA), Report Introduction to Remuneration Schemes of Renewable Energy in the EU. The Vision of Producers, February 2003.

[35]   C-63, Luis Jesús Sánchez de Tembleque and Gonzalo Sáenz de Miera, The Regulation of Renewable Energy, in Treaty for the Electricity Sector, 2009; C-232, CNE Report: Proposed methodology for the revision of premiums and prices under the special regime, 2 April 2003.

[36]   C-75, Royal Decree 436/2004, Preamble, Eighth Paragraph.



FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM   INDEX NO. 656251/2018
NYSCEF DOC. NO. 4                                           RECEIVED NYSCEF: 12/14/2018

participating in the market and premium.[37]  RD 436/2004 also continued to guarantee that producers would receive a "reasonable remuneration".[38]

75.    In order to incentivize investors, RD 436/2004 revised the rate scale for FiTs, premiums and incentives.  For example, PV facilities of 100kW or smaller received an almost 95% increase in FiT rates.[39]  However, the FiT rates were not fixed but were set as percentages of the "Average Electricity Tariff" (**AET**), which was an index determined annually by Spain based on a complex set of variables affecting the cost of the electricity system, including the cost of the renewables support scheme itself.  Spain only subsequently realised that the linking of the FiTs to this index created a "feedback loop" whereby growth in renewable energy generation led to an increase in the AET, which in turn led to an increase in the FiTs even if the cost per kWh produced did not increase.[40]

76.    Notably, RD 436/2004 introduced a provision that any future revisions to the FiTs, premiums and incentives would not apply to facilities already registered and in operation under the support scheme.[41]

(v)    Renewable Energies Plan 2005-2010 (2005 PER)

77.    In August 2005, a Renewable Energies Plan for the period 2005-2010 (**2005 PER**) prepared by IDAE was approved by the Council of Ministers.  The 2005 PER revised the 1999 PER and acknowledged the insufficient growth of Spain's renewable electricity capability.[42]  In order to meet Spain's target of 29.4% share of renewables in total electricity consumption by 2010 in light of a projected growth in energy demand, the 2005 PER increased Spain's installed PV capacity target for 2010 from 144 MW to 400 MW.[43]  The 2005 PER also projected that PV electricity generation would require €1.875 billion in total capital investment, of which amount nearly 80% would be debt financed.[44]

(vi)    Royal Decree 661/2007

78.    Like RD 2818/1998 before it, RD 436/2004 failed to attract the level of investment in renewable energy necessary for Spain to meet its 2010 targets.

---

[37]    C-75, Royal Decree 436/2004, Art. 22.
[38]    C-75, Royal Decree 436/2004, Preamble, Seventh Paragraph.
[39]    SoC, ¶ 137.
[40]    Moselle/Grunwald 2nd, ¶ 6.9; Moselle/Grunwald Presentation, slide 22.
[41]    C-75, Royal Decree 436/2004, Arts. 40.2, 40.3.
[42]    C-84, Summary of Renewable Energy Plan 2005-2010 ("2005 PER Summary"), August 2005.
[43]    This was subsequently revised down to 371 MW in RD 661/2007.
[44]    C-84, Summary of Renewable Energy Plan 2005-2010 ("2005 PER Summary"), pp. 56-58.

ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

18

FILED: NEW YORK COUNTY CLERK 12/14/2018 04:48 PM
NYSCEF DOC. NO. 4

INDEX NO. 656251/2018
RECEIVED NYSCEF: 12/14/2018

The shortfall in PV investment was pronounced; whereas the 2005 PER targeted a PV capacity of 400 MW by 2010, Spain's installed PV capacity as of 2006 was 84 MW.[45]

79.     Consequently, Spain decided to reform the RD 436/2004 support scheme. In February 2007, the CNE published a report on the draft regulations that would later become RD 661/2007. The CNE observed inter alia that economic incentives were necessary to promote the development of renewables and that "[i]n certain cases, differentiated incentives are justified that lead to higher returns, so that the objectives set in the planning can be achieved."[46] The CNE also called for the draft regulations to be amended to include "sufficient guarantees to ensure that the economic incentives are stable and predictable throughout the entire life of the facilities...."[47]

80.     On 27 May 2007, Spain enacted the new regulation, RD 661/2007, which repealed and replaced RD 436/2004.

81.     RD 661/2007 introduced several changes to the incentives available to qualifying renewable electricity producers under the Law 54/1997 general regulatory framework. Unlike the RD 2818/1998 and RD 436/2004 support schemes, PV facilities registered under RD 661/2007 were entitled only to a FiT and were not given the option to receive a premium. But whereas incentives under RD 436/2004 were based on the AET index – which was determined annually by Spain – RD 661/2007 fixed the FiT in absolute numbers (c€/kWh), based on the facility's total electricity generation capacity, for the whole life of a facility.

82.     Annex V of RD 661/2007 contains the following table setting out the FITs offered to qualifying PV facilities ("Category b 1.1"), sub-grouped by power output of the facility.

---

[45]   C-80, Kingdom of Spain, Report of the Kingdom of Spain on the Degree of Fulfillment of the National Indicative Targets for Renewable Electricity Consumption in 2010 – Year 2006 ("2006 Progress Report"), pp. 12, 17.
[46]   C-61, CNE Report 3/2007, 17 February 2007.
[47]   C-61, CNE Report 3/2007, 17 February 2007.



ARBITRATION INSTITUTE
OF THE STOCKHOLM CHAMBER OF COMMERCE

19