**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In the Matter of the Arbitration Between<br><br>FORESIGHT LUXEMBOURG SOLAR 1 S.À.R.L.<br>FORESIGHT LUXEMBOURG SOLAR 2 S.À.R.L.<br>GREENTECH ENERGY SYSTEMS A/S (NOW KNOWN AS ATHENA INVESTMENTS A/S)<br>GWM RENEWABLE ENERGY I S.P.A.<br>GWM RENEWABLE ENERGY II S.P.A.<br><br>                                  Petitioners,<br><br>                                  v.<br><br>THE KINGDOM OF SPAIN<br><br>                                  Respondent. | **Case No.: 1:19-cv-03171-ER** |

## MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S MOTION TO STAY

James E. Berger
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York, 10036
Tel: 212-556-2202
Fax: 212-556-2222
*jberger@kslaw.com*


*Attorneys for Petitioners*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Background | 1 |
| III. | Argument | 2 |
| | A. The First and Second *Europcar* Factors Clearly Weigh Against a Stay | 2 |
| |     1. A Stay Would Hinder the General Objectives of Arbitration | 2 |
| |     2. The Status of the Foreign Proceedings does not Support a Stay | 4 |
| | B. The Third and Fourth *Europcar* Factors Clearly Weigh Against a Stay | 6 |
| | C. The Fifth and Sixth *Europcar* Factors Clearly Weigh Against a Stay | 7 |
| | D. In the Event the Court Grants a Stay, It Should Require Spain Post Security | 8 |
| IV. | Conclusion | 9 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*,
  No. 90-Civ-4169 (JFK), 1990 WL 213030 (S.D.N.Y. 1990) ..................................................... 9

*Chevron Corp. v. Republic of Ecuador*,
  949 F.Supp. 2d 57 (D.D.C. 2013) ........................................................................................... 3

*Colorado River Water Conservation Dist. v. U.S.*,
  424 U.S. 800 (1976) ................................................................................................................ 8

*Europcar Italia, S.p.A. v. Maeillano Tours, Inc.*,
  156 F.3d 310 (2d Cir. 1998) ............................................................................................ passim

*G.E. Transp. S.P.A. v. Republic of Albania*,
  693 F. Supp.2d 132 (D.D.C. 2010) ......................................................................................... 3

*Getma Int'l v. Republic of Guinea*,
  142 F.Supp. 3d 110 (D.D.C. 2016) ...................................................................................... 4, 6

*Gold Reserve Inc. v. Bolivarian Republic of Venez.*,
  146 F.Supp.3d 112 (D.D.C 2015) ........................................................................................... 4

*InterDigital Commc'ns, Inc.*,
  166 F. Supp. 3d 463 (S.D.N.Y.) .............................................................................................. 4

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc. InterDigital Commc'ns, Inc.*,
  596 F.2d 70 (2d Cir. 1979) 166 F. Supp. 3d 463 (S.D.N.Y.) ................................................. 8

*Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006) ...................................................................................................... 8

*Science Applications Int'l Corp. v. Hellenic Republic*,
  No. 13-CV-1070(GK), 2017 WL 65821 (D.D.C. Jan. 7, 2017) .............................................. 7

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) ........................................................................................................ 8

**Statutes**

28 U.S.C. § 1610 (c). ...................................................................................................................... 8

**Other Authorities**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
 June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ............................................................. *passim*

Energy Charter Treaty, Dec. 17, 1994, 2080 U.N.T.S. 95 ...................................................... *passim*

*Kingdom of Spain v. Novenergia II – Energy & Environment (SCA), SICAR*, Case
 No. T-4658-18, Order (Svea Ct. App. Apr. 25, 2019) .........................................................5, 6

*PL Holdings S.A.R.L. v. Republic of Poland*, Case No. T-8538-17, T-12033-17,
 Final Judgment (Svea Ct. App. Feb. 22 2019) ........................................................................5

*Slowakische Republik (Slovak Republic) v. Achmea BV*, CJEU Case C-284/16,
 Preliminary Ruling, Mar. 6, 2018 .................................................................................. *passim*

## I. INTRODUCTION

Petitioners submit this memorandum in opposition to Spain's request to stay proceedings pursuant to Article VI of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (hereinafter "New York Convention"). The Court should deny the motion or, in the alternative, condition any stay upon Spain's posting of security for the award at issue herein (the "Award"), for all the reasons that follow.

## II. BACKGROUND

Petitioners commenced this action in the Supreme Court of the State of New York, New York County, on December 14, 2018. Dkt. 5-1, at 2. Two months later, Spain commenced an action (the "Set-Aside Action") in the Svea Court of Appeal ("Svea Court") in Sweden seeking to vacate the Award. Declaration of Jakob Ragnwaldh ("Ragnwaldh Dec."), Dkt. 30, ¶ 6. At the time it filed the Set-Aside Action, Spain simultaneously sought, on an *ex parte* basis, an order suspending enforcement of the Award. *Id.* at ¶ 6. On February 21, 2019, the Svea Court issued an order (the "Order") suspending enforcement of the Award "until further notice." *Id.* at ¶ 7.

At the time of the issuance of the Order, Spain's application had not yet been adjudicated, and Petitioners had not yet been "afforded an opportunity" to put on its case. Order, Ragnwaldh Dec., Ex. B, Dkt. 30, at 2. Petitioners expect that the Set-Aside Proceeding will not be adjudicated until, at the earliest, early 2021. Ragnwaldh Dec., Dkt. 30, ¶ 14 (noting that resolution of Spain's application could "very likely take at least two years, if not more"); *see also* Second Declaration of Jakob Ragnwaldh (hereinafter "Second Ragnwaldh Dec."), ¶ 9. If the Svea Court refers any questions to the Court of Justice of the European Union ("CJEU"), the timeframe for resolution would likely be much longer. Ragnwaldh Dec., Dkt. 30 at ¶ 14 (noting that referral to the CJEU would likely mean an additional 18-24 months before resolution of Spain's application); *see also* Second Ragnwaldh Dec., ¶ 9.

## III. ARGUMENT

Spain's request for a stay of this proceeding is governed by Article VI of the New York Convention, which provides that:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V (1) (e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

New York Convention, Art. VI.

It is well-established that stays under Article VI "should not be lightly granted[.]" *Europcar Italia, S.p.A. v. Maeillano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998). *Europcar* establishes the framework by which a court should examine whether a stay under Article VI is proper, and the Second Circuit in that case established a non-exclusive six-factor test for determining whether a stay is appropriate. *Id*. at 317–18. Specifically, a district court should examine the following six factors: (1) the general goals of arbitration, including the expeditious resolution of disputes and the avoidance of protracted (and costly) litigation; (2) the status of the foreign proceedings and the length of time required to resolve those proceedings; (3) whether the award in question will receive greater scrutiny in foreign proceedings under a less deferential standard of review; (4) the characteristics of the foreign proceedings; (5) the balance of possible hardships of the parties; and finally (6) "any other circumstances" that would favor for or against adjournment. *Id.* at 317–18. These factors clearly weigh against this Court granting a stay.

### A. The First and Second *Europcar* Factors Clearly Weigh Against a Stay

The "general objectives of arbitration," in addition to the status of the foreign proceedings pending in Sweden clearly weigh against a stay.

#### 1. A Stay Would Hinder the General Objectives of Arbitration

First, *Europcar* makes clear that stays are undesirable as the "adjournment of enforcement proceedings impedes the goals of arbitration – the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *Europcar*, 156 F.3d at 317. Petitioners commenced this arbitration in 2015, obtaining the Award in their favor only after expending significant resources over the course of three years. In *Chevron Corp. v. Republic of Ecuador*, the court refused to grant a stay, even though it appeared that foreign set aside proceedings would be resolved within a year or less, as "the New York Convention [] require[s] immediate satisfaction of arbitral awards." *Chevron Corp. v. Republic of Ecuador*, 949 F.Supp. 2d 57, 72 (D.D.C. 2013) (noting that as the arbitration commenced six years prior, further delay was disfavored); *see also G.E. Transp. S.P.A. v. Republic of Albania,* 693 F. Supp.2d 132, 139 (D.D.C. 2010) (refusing to grant a stay where the award resulted from "a complex international arbitration . . . [that] involved almost three years of preparation and work") (internal citations omitted). In its memorandum, Spain argues that Petitioners' reliance on *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp.2d 132, 139 (D.D.C. 2010) is misplaced, as that case did not involve the examination of a dispute "over the existence of an arbitration agreement[.]" Respondent's Mem. In Support of Motion to Stay ("Stay Br."), at 10. But neither the New York Convention nor the caselaw interpreting Article VI provide that the *type* of defense asserted in set-aside proceedings should be an independent factor to be considered in connection with an application for a stay under the New York Convention. What *G.E. Transp. S.P.A.* does make clear, however, is that barriers to resolution of a dispute — even after the passage of a few years — weighs against the issuance of a stay. *G.E. Transp. S.P.A.*, 693 F. Supp.2d at 138–39 (noting that the petitioners "have yet to receive any satisfaction, nearly four years after commencing arbitration," thus finding that the first *Europcar* factor weighed in favor of petitioners). Thus, as "no final resolution appears imminent,"

a stay would be improper. *Gold Reserve Inc. v. Bolivarian Republic of Venez.*, 146 F.Supp.3d 112, 135 (D.D.C 2015) (denying Venezuela's request for a stay of confirmation proceedings as the annulment proceedings in France would not be "resolved soon," instead confirming the arbitral award).

Furthermore, in cases where courts have granted Article VI stays, several courts have done so because final resolution of the foreign annulment proceeding was expected to occur within a matter of months. *See, e.g., InterDigital Commc'ns*, *Inc.,* 166 F. Supp. 3d 463, 471–72 (S.D.N.Y. 2016) (finding stay appropriate as the foreign proceedings would be resolved in only a few months); *see also Getma Int'l v. Republic of Guinea*, 142 F.Supp. 3d 110, 115 (D.D.C. 2016) (finding the factors weighing against a stay given the "likely possibility that the [court examining set-aside petition] will render a decision well within a year from the issuance of this Opinion"). Here, in contrast, the Set-Aside Action is unlikely to be resolved for at least two years, and possibly longer. Ragnwaldh Dec., Dkt. 30, at ¶¶ 14–15; *see also* Second Ragnwaldh Dec., ¶ 9.

### 2. The Status of the Foreign Proceedings does not Support a Stay

Spain argues that a stay would "guard against the possibility of expensive and protracted litigation that would be necessary, **after the Swedish court annuls the award**", assuming, and asking the Court to assume, that Spain's success in the Set-Aside Action is virtually a foregone conclusion. Stay Br., at 9. But Spain's success is by no means assured. Spain relies heavily on the issuance of the Order which, as noted above, was issued *ex parte* and prior to any meaningful opportunity for Petitioners to be heard as to the merits of Spain's application. *See* Ragnwaldh Dec., Dkt. 30, at ¶6. But a review of the broader record of the stated views of the Swedish government and its courts on the issues presented in this dispute should give the Court pause before crediting Spain's optimism.

4

First, a recent decision of the Svea Court indicates that that court is unconvinced of Spain's argument. Specifically, in *PL Holdings v. Republic of Poland*, a case involving an arbitration under a bilateral investment treaty ("BIT) between an EU-based investor and Poland, an EU member state, Poland argued — as Spain does here — that under the CJEU's holding in *Achmea*, no valid agreement to arbitrate existed between it and PL Holdings, thus rendering the partial and final awards invalid. *See PL Holdings S.A.R.L. v. Republic of Poland*, Case No. T-8538-17, T-12033-17, Final Judgment, pp. 34–35 (Svea Ct. App. Feb. 22 2019), Second Ragnwaldh Dec., Ex. B. The Svea Court disagreed, however, and declined to find that *Achmea* invalidated the arbitration agreement and resulting awards. *Id.* at pp. 41–44. While the CJEU's ruling was based on Poland's failure to raise the *Achmea* defense in a timely manner, the Svea Court's ruling — that a litigant can effectively waive a defense based on the supposed primacy of EU law — suggests that the Svea Court does not view the issue as presenting the same degree of importance to the functioning of the European Union as Spain would have this Court believe. *Id.* at 41–44 (rejecting Poland's argument that "[i]ntra-EU investment disputes that are determined by an arbitral tribunal . . . prevent the full effectiveness and uniform application of EU law," which therefore "undermines the autonomy of EU law."). Indeed, the Svea Court ruling in *PL Holdings* is notable, as "public policy is a non-waivable ground for setting aside an arbitral award in Sweden." Second Ragnwaldh Dec., ¶ 15.

Second, the Svea Court recently rejected a request by Spain for preliminary referral to the CJEU on **precisely the same issue as is presented in this case**. Specifically, in the *Novenergia II* case, which concerns an arbitral award under the ECT, Spain requested that the Svea Court refer the *Achmea* question to the CJEU, and the Svea Court refused to do so in a one-page summary order dated April 25, 2019 (a fact notably absent from Spain's Memorandum when discussing the

*Novenergia II* proceeding in Sweden, *see* Stay Br., at 13, as well as Spain's expert declaration, *see* Dkt. 43, at 9–10). Ragnwaldh Dec., Dkt. 30, at ¶ 13. Here again, the Svea Court's order suggests that that court does not consider the issues raised by *Achmea* to bear on "fundamental issues of EU law" when considering an arbitral award rendered under a multilateral treaty like the ECT. Stay Br., at 11.

### B. The Third and Fourth *Europcar* Factors Clearly Weigh Against a Stay

The third factor under *Europcar* asks courts to examine whether an award will receive greater scrutiny in the foreign proceeding; where it will, that factor favors a stay, since the foreign court's application of its own law to the award could be "better suited to determine the validity of the award." *Europcar*, 156 F.3d at 317; *see also Getma Int'l,* 142 F. Supp. 3d at 116 (finding that possibility that the court of primary jurisdiction could set aside the award, "weighs mildly in favor of [granting a] stay.") (internal citation omitted). While the Svea Court will apply Swedish law to the Award, the applicability of this factor in this case is unclear. Spain argues that the validity of the Award turns on EU law, and that deference should be accorded to the Svea Court, which is a court of an EU member state. *See* Stay Br., at 11–12. Spain's arguments before the Svea Court, however, mirror closely those it makes before this Court under the New York Convention, including that the Award violates public policy. *See generally* Dkt. 44-1; *see also* Dkt. 44-1 at ¶¶ 181—89. More importantly, however, the issues of EU law that Spain seeks to litigate before the Svea Court are not germane in this case; the primary issue before this Court is whether Spain made an arbitration agreement with Petitioners as a matter of fact (which it indisputably did), and whether Spain has demonstrated that that agreement is inoperative as a matter of law (which it has not). Particularly where, as Petitioners demonstrate in their Sur-Sur-Reply (filed contemporaneously herewith) that Spain has not provided the Court with any evidence demonstrating that the arbitration agreement is invalid as a matter of Swedish law, there is nothing

6

in the record of this proceeding from which the Court can determine what legal issues will be raised in the Swedish proceeding, or the scrutiny to which the Award will be subjected.

The fourth *Europcar* factor asks courts to examine, among other related considerations, "whether [the foreign proceedings] . . . were brought to enforce an award (which would tend to weigh in favor of the stay) or to set the award aside (which would tend to weigh in favor of enforcement)," in addition to whether the foreign proceedings were initiated prior to the enforcement proceedings. *Europcar*, 156 F.3d at 318. Petitioners filed this confirmation proceeding **prior** to Spain's filing of the Set-Aside Action, meaning that both prongs of the fourth *Europcar* factor weigh against a stay. *Europcar*, 156 F.3d at 318; *see also Science Applications Int'l Corp. v. Hellenic Republic*, No. 13-CV-1070(GK), 2017 WL 65821, *4 (D.D.C. Jan. 7, 2017) (noting that, as the set-aside proceedings "were not initiated before the underlying enforcement proceeding and, therefore, there needs to be no concern about international comity", thus declining to issue a stay).

## C. The Fifth and Sixth *Europcar* Factors Clearly Weigh Against a Stay

Finally, factors five and six clearly weigh against a stay. Under these factors, a court is directed to examine the "balance of possible hardships," in addition to "any other circumstances that could tend to shift the balance in favor of or against adjournment." *Europcar*, 156 F.3d at 318. In support of its application under these factors, Spain states that "premature enforcement could be significant and irreversible," though it fails to articulate what would cause such "irreversible" harm. Stay Br., at 12. This is unsurprising, since there is no risk of "irreversible" or irreparable harm. First, confirmation of the Award would not lead to the immediate attachment of assets in the U.S. As Spain is likely aware, under the Foreign Sovereign Immunities Act ("FSIA"), additional proceedings are required before any assets could be subject to attachment in the United States, including a determination that a "reasonable period" has lapsed after recognition

7

of an award pursuant to 28 U.S.C. § 1610 (c) of the FSIA. Second, assuming the "harm" that Spain refers to is financial loss resulting from satisfaction of a judgment, such harm is by definition not irreparable. *See, e.g.*, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) ("Irreparable harm is an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation[.]'") (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (internal citations omitted)). The hardship and harm to Petitioners, however, is ongoing and tangible, as Petitioners continue to be deprived of the compensation awarded them by the arbitral tribunal for the losses caused by Spain's conduct. The balance of hardships clearly weighs in Petitioners' favor.

Finally, the sixth *Europcar* factor allows courts to consider "any other circumstances" relevant to issuing a stay. *Europcar*, 156 F.3d at 318. Under this factor, Spain generally cites principles of "comity" in support of its request for a stay, as the Award "implicates a matter of great significance to the European Union," failing to offer any authority in support of such a broad assertion. Stay Br., at 13. This argument, however, fails to justify why this Court should ignore its "virtually unflagging obligation . . . to exercise the jurisdiction" conferred upon it. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). The mere presence of parallel litigation does not negate this obligation. *See Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92, 94 (2d Cir. 2006) (finding abuse of discretion when court, invoking comity, dismissed action in favor and in deference to foreign parallel proceedings) (internal citations omitted). Thus, Spain has similarly failed to articulate why principles of comity warrant a stay of this proceeding.

### D. In the Event the Court Grants a Stay, It Should Require Spain Post Security

In the event that this Court grants Spain's request for a stay, this Court should condition the stay on the granting of security. Under Article VI of the New York Convention, such relief is

explicitly recognized. New York Convention, Art. VI (noting that a court "may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security."). Courts in this Circuit have recognized this relief when granting a stay of enforcement proceedings. *See Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, No. 90-Civ-4169 (JFK), 1990 WL 213030, *8 (S.D.N.Y. 1990) (requiring respondent post over $10 million in security before granting a stay under Article VI). Thus, Spain should be required to post security with this Court should a stay be granted.

**IV. CONCLUSION**

For the foregoing reasons, Petitioners respectfully request this court to deny Spain's Motion to Stay Enforcement of the Arbitral Award.

Dated: New York, New York
June 5, 2018

Respectfully submitted,

*/s/James E. Berger*
James E. Berger

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York, 10036
Tel: 212-556-2202
Fax: 212-556-2222
*jberger@kslaw.com*

*Attorneys for Petitioner*
